# Appeal of Anna J. Cross and A. W. Gault, Guardian, etc.

1. A resulting trust in lands must arise, if at all, at the inception of title, either through fraud in the acquisition of that title, or through the payment of the purchase-money by which it is obtained.

2. The mere fact that the owner of land uses trust funds in the improvement thereof, will not raise for the beneficiaries of such funds a resulting trust in the land, so as to entitle them to the proceeds thereof to the exclusion of judgment creditors subsequent to the making of the improvements.

3. Such beneficiaries are not entitled to any equitable lien against the real estate. Such a lien is unknown to Pennsylvania jurisprudence.

March 23d 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Chester county:* Of January Term 1881. No. 251.

Appeal of Anna J. Cross and of A. W. Gault, guardian of

Mary E. McCreary, from a decree of the said court confirming the report of an auditor in the matter of the distribution of the assigned estate of John Y. Woodward. The facts of the case were as follows: John Y. Woodward was appointed, in 1865, guardian of Anna J. and Mary E. Cross, minors, by the Orphans' Court of Chester county, without being required to give security. He was at that time the owner of a farm containing about 80 acres. He received from time to time, various sums of money belonging to his wards, which he mixed with his own moneys, and invested in the erection of buildings on his farm. Upon the settlement of his accounts as guardian in 1880, the auditor thereof found a balance due by him to Anna J. Cross (who had attained her majority), of $852.54 and a balance due Mary McCreary of $1269.19, including interest.

In 1859, prior to his appointment as guardian, Woodward had confessed a judgment to Ephraim Lilley for $1050, which had been duly revived; he also gave a judgment in 1878, to one Mode, for $450, and in January 1879, he confessed a judgment to his son, John Y. Woodward, Jr., for $1750, and another to his daughter Mary, the wife of Isaac J. Taylor, for $850.

On November 14th 1879, the said John Y. Woodward, being in failing circumstances, made an assignment of all his estate, including the farm, to Job Keech, in trust for creditors. The farm was sold by the assignee under an order of court for a sum which was insufficient to pay all the above debts. The assignee paid and received credit for the liens on the real estate which existed prior to the receipt of any of the wards' moneys by the assignor.

Before the auditor of the assignee's account, it was claimed, on behalf of Anna J. Cross and Mary E. McCreary, that the balance of the fund which was produced by the sale of the farm, should be applied, in the first place, to the payment in full of the amount of the wards' moneys which had been invested by Woodward as guardian in the improvement of the farm by the erection of buildings thereon; this on the ground, that the fund was impressed with with a trust, or equitable lien, in their favor.

The auditor held, that the facts did not raise a resulting trust, and that the doctrine of equitable lien, in such case, does not exist in Pennsylvania. He therefore reported, that the claims of the minors must come in upon the fund without preference and only as common debts, and he awarded distribution of the balance in the hands of the assignee to John Y. Woodward, Jr., and Mary A. Taylor as judgment creditors.

Exceptions filed to the report on behalf of Anna J. Cross and Mary E. McCreary, were dismissed by the court, and the report of the auditor confirmed, FUTHEY, P. J., delivering the following opinion, after stating the facts:

[Appeal of Cross and Gault.]

"If the real estate of Woodward had been purchased with these trust moneys, this principle [of resulting trust] would have applied with force.   But is it applicable under the facts of the case ?   The real estate was not thus purchased, and indisputably belonged to the guardian in his individual right.   He simply made use of the moneys of his wards in the manner above indicated.   In the cases where real estate has been impressed with a trust arising from the use of trust funds, there has been fraud in obtaining the title, or payment of the purchase-money with the trust funds when the title was acquired.   In such cases a resulting trust is raised, and the purchaser is made a trustee: Barnet v. Dougherty, 8 Casey 371 ; Kellum v. Smith, 9 Id. 158; Bickel's Appeal, 5 Norris 204 ; Bispham's Equity, sect. 86 ; 1 Perry on Trusts, sect. 133.

"No trust arose when Woodward became the owner of the real estate.   The use of the trust moneys afterwards, in the manner indicated, did not impress the lands with a trust, or give the cestuis que trustent an interest therein which can be followed.   The identity of the trust funds is lost.   They cannot be traced.   They were used in paying debts contracted for improvements which are so united with the land as to be incapable of ascertainment in the sense contemplated by the law.   It is impossible for a chancellor to say that the purchase-money of the real estate, or any particular part of it, is the product of the trust moneys made use of by him.

"Neither did the cestuis que trustent acquire any charge on the land by reason of the use made of their moneys.   It could, at most, be but an equitable lien, and such liens have not been engrafted on our jurisprudence: Hepburn v. Snyder, 3 Barr 72.

"The report of the auditor is confirmed."

The exceptants took this appeal, assigning for error the dismissal of their exceptions and the confirmation of the auditor's report.

R. Jones Monaghan, for the appellants.—The auditor found in our favor the facts that the assignor, Woodward, received the minors' money as their guardian, and invested it in buildings on his farm, intending it at the time as an investment for the benefit of the minors, supposing the same to be safer than an investment in bonds or stocks.   The identity of the fund was clearly traced. In such case the converted property will be held in its new form liable to the rights of the cestui que trust.   This principle has been applied in the distribution of an assigned estate, so as to permit the ward of an assignor to claim funds belonging to her, but loaned by her guardian in his own name, which had been received by his assignees : Rossiter's Appeal, 2 Barr 371.   A similar rule has been applied in Marshall v. Hoff, 1 Watts 440 ; Robb's Appeal, 5 Wright 48 ; Sadler's Appeal, 6 Norris 158 ; Farmers' & Mechanics' Bank v. King, 7 P. F. Smith 205 ; Harrisburg Bank v. Tyler, 3 W. & S. 378 ; Sheetz v. Marks, 2 Pearson's Decis. 302.

[Appeal of Cross and Gault.]

The resulting trust which we claim is not against the land, but against the proceeds of the land, into which it has been reconverted. Even if in strictness there is no technical resulting trust, we have an equitable charge or lien on the fund for our trust moneys which have been traced into it: 2 Perry on Trusts, sect. 837; 2 Story's Eq. Jur., sect. 1265; Bispham's Eq., sect. 86; Wallace *v.* Duffield, 2 S. & R. 528, per GIBSON, J.

*W. B. Waddell* and *A. P. Reid*, for the appellees.—No resulting trust can arise except for fraud in obtaining title, or from the payment of purchase-money when the title is acquired: Barnet *v.* Dougherty, 8 Casey 371; Rogers *v.* Murray, 3 Paige 390–398; Botsford *v.* Burr, 2 Johns. Ch. 405, 414–415; Nixon's Appeal, 13 P. F. Smith 279; Bickel's Appeal, 5 Norris 204. The English doctrine of equitable lien has never been engrafted upon our jurisprudence: Hepburn *v.* Snyder, 3 Barr 72.

Mr. Justice GORDON delivered the opinion of the court, May 2d 1881.

The money in court for distribution was raised from the sale of the real estate of John Y. Woodward, which he had previously assigned for the benefit of his creditors. This fund was claimed by judgment-creditors to whom it was awarded by the court below; it was also claimed by the appellants, for whom Woodward had been appointed guardian sometime in the year 1865. Their claim upon the fund arises in this manner: the account of Woodward as guardian was settled in the Orphans' Court on the 28th June 1880, and he was found to be indebted to the estate of the minors in the sum of $1269.19, which sum he was unable to pay. Furthermore, the auditor has found that Woodward used this money of his wards in the improvement of the real estate from which the fund for distribution was raised. The claim now put forward by the appellants is, that as Woodward used these trust-moneys belonging to them, in the improvement of the land which produced the money in controversy, the land itself, and hence the fund raised from it, was and is impressed with that trust, and that it ought in the first place to be used in the liquidation of their claim. Clearly, if the premise thus stated be correct, the conclusion follows as of course, for it is too well settled for discussion, that the law will follow the trust fund through any number of transmutations if it can be recognised clearly in those transmutations. But the auditor and the court below thought that this money of the appellants was not so impressed upon the Woodward lands; it certainly was not used in the purchase of those lands. Hence, there was no resulting trust in favor of the appellants, for a resulting trust in lands must arise, if at all, at the inception of title, either through fraud in the acquisition of that title, or through the payment of the purchase-

money by which it is obtained : Barnet *v.* Dougherty, 8 Casey 371. As neither of these things happened in this case, the claim of the appellants cannot be sustained on the ground of such a trust.    As, therefore, the money of these minors was not used in the acquisition of the title, it cannot be pretended that they have any direct interest in the lands covered by it.   Neither, then, as owners or part owners, legal or equitable, have they a standing to claim the fund in controversy, or any part of it.   If, then, the appellants had no such interest in the lands as to give them a claim upon the fund in court, by what right do they seek to be preferred to judgment-creditors ?

There is no doubt that their money went to improve the lands of Woodward, and hence, may have given them a value they would not otherwise have had, but as we have seen, that did not give them a right in the title by which those premises were held, and they cannot on this ground successfully claim the fund in controversy.

But it is said, the money of these beneficiaries has been used to improve this property, and that they ought, therefore, to have a lien upon it to the extent of the moneys so expended.   But what kind of a lien ?   Not a statutory one, for the Act of 1832, which would have given them a lien, was not pursued.   A lien arising from the equitable circumstances of the case ?   But such a lien is unknown to Pennsylvania jurisprudence ; it has not been as yet engrafted upon our legal system, and it is to be hoped never will be : Hepburn *v.* Snyder, 3 Barr 72.   This is, no doubt, a hard case, but were we to establish the doctrine of equitable liens for the purpose of meeting this hard case, it would be like the letting out of water, disaster and confusion would be the result.   In vain would the unfortunate judgment-creditor depend upon the dockets and records provided for his protection.   Debts that he thought secure would be swept away by the insidious operation of secret equitable liens.   With the utmost confidence might he bid in a tract of land to cover his judgment, only to find in the end that he had involved himself, and that perhaps hopelessly, for the benefit of some one else.   Nor would a mortgagee be in a much better situation, for though he is in a better position than a judgment-creditor, in that he is partially protected by the recording acts, yet he would always be exposed to the danger of having sprung upon him proof of notice of some hidden lien for which he was wholly unprepared.   How easily such notice can be proved, since the Act of 1869, we all understand.

We think, therefore, it is better for us to adhere to the old paths, with which we are well acquainted, rather than to try new ones which may lead us to unexpected disaster.

The judgment of the court below was right, and its opinion is

[Appeal of Cross and Gault.]

so thoroughly logical and well considered that we do not profess to have anything of value to add to it except our approval.

Decree affirmed at the costs of the appellants.°

SHARSWOOD, C. J., dissented.