# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## George Beringer v. Henrietta Lutz and Daniel Lutz, her husband, Appellants.

*Husband and wife—Resulting trust—Evidence.*

Where a married woman seeks to establish a resulting trust in land the record title of which is in her husband, she must show by evidence that is clear and satisfactory, first, that she paid a portion of the purchase money for the land in controversy; second, that it was paid upon an agreement that she was to have the title to the land or such portion of it as she paid for; and third, that the money so paid belonged to her as her separate estate. The resulting trust must be impressed on the title when it passes to the alleged trustee, and cannot be engrafted upon it afterwards. The agreement to advance the purchase money, or a portion of it, and take title to the land, or a proportional part, must precede or be contemporaneous with the purchase.

In proceedings by a purchaser at sheriff's sale to recover possession, the wife of the defendant in the execution claimed an interest in the land under an alleged trust resulting from the payment of $2,000 of the purchase money. The evidence tended to show that some years before, the wife's father gave a deed for thirteen acres of land to the husband, and took his note for $400, the price of the land, and charged the note to his daughter's share in his estate. This was done because the father had an erroneous opinion that a married woman could not lawfully take title to land. The husband and wife went upon the land, improved it, and subsequently sold it with other land of the husband, and divided the money according to their respective interests. The money thus received by the wife, together with other moneys received from her father's estate, made

up the $2,000 contributed towards the purchase money of the land in controversy.  The evidence for the wife tended to show that she furnished $100, the hand money paid upon the preliminary contract, and $1,000, the amount paid upon the delivery of the deed; that this was furnished upon the express agreement with her husband that she was to have an interest in the title corresponding to the amount of purchase money she should furnish, and that she subsequently furnished $900 more in pursuance of this agreement.  *Held,* (1) that the presumption of title arising from the form of the deed and the note was such a presumption as might be rebutted; (2) that as the testimony was in apparent contradiction of the deed and note, the question for the jury was whether the papers were so explained and accounted for by the testimony as to overcome the presumption arising, prima facie, upon them, and establish the title of the wife in the thirteen acres admittedly paid for out of her share in her father's estate; (3) that if the testimony introduced by the defendant was believed, the money paid by her for the land in controversy was paid in time to establish a resulting trust in her favor; (4) that the whole case was for the jury under proper instructions.

*Practice, C. P.—Points—Review.*

It is error to affirm a point which is argumentative in character, and drawn for the purpose of securing from the court an indorsement of the line of argument the plaintiff is about to present to the jury upon the facts and of the credibility of the witnesses, and which contains an assumption of the truth of the plaintiff's contention upon questions that are properly for the jury.

*Practice, S. C.—Stenographer's notes—Record.*

The Supreme Court will not consider a paper signed by the stenographer of the court below and handed up at the argument, expressing an opinion that a certain instruction contained in the certified record had been incorrectly transcribed by him.

Argued Oct. 5, 1896.   Appeal, No. 236, Oct. T., 1895, by defendants, from judgment of C. P. Venango Co., April T., 1892, No. 68, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Transcript of proceedings before a justice of the peace for the possession of a tract of land purchased by plaintiff at sheriff's sale, and declaration in ejectment under the act of June 16, 1836.   Before TAYLOR, P. J.

The facts appear by the charge of the court and the opinion of the Supreme Court.

The court charged in part as follows:

Daniel Lutz, one of the defendants in this action, had a deed upon record for about one hundred acres of land in Clinton township, in this county. Judgment was obtained against him, the land was levied upon as his property and sold on August 31, 1891, by the sheriff to the plaintiff, George Beringer, for the consideration of $2,175. The defendants, being in possession of the land, the proceedings were instituted under our act of assembly, allowing that to be done before a justice of the peace, in order to recover possession of land that had been purchased at a sheriff's sale. The magistrate then certified into the court of common pleas, to be tried here, as to whether the purchaser at the sheriff's sale was the owner of the land and entitled to the possession. That is the issue that you are trying here. At the sheriff's sale a notice was read in the hearing of bidders, notifying them that the defendant, Henrietta Lutz, was the owner of sixteen twenty-thirds of the land; that she had paid the purchase money for that land, and that any party purchasing would purchase with notice of her claim upon that land. This was notice to the bidders of her equitable title in the land, and afterwards if she could sustain that claim to it, she would be entitled to a verdict; it depending entirely upon the trial of this issue whether she could sustain what she notified the purchaser there.

Gentlemen, in this case the deed for the land was made by James Porter to Daniel Lutz, the husband of Henrietta Lutz, the other defendant. The actual payment of the purchase money all through was made by Mr. Lutz. The deed from Porter to Lutz in connection with the judgment against Lutz, the execution thereon, the sheriff's sale and deed to the plaintiff, made a prima facie case which, in the absence of rebutting evidence of such character as we will instruct you hereafter, would be sufficient to warrant a verdict for the plaintiff.

The theory of Mrs. Lutz, and what she asks you to find is, that notwithstanding the deed was in the name of her husband, she was in fact the owner of sixteen twenty-thirds of the land; that the purchase money that was paid for this tract of land was derived from the sale of a small tract of land situated in Lawrence county, containing about nineteen acres in all, thirteen of which she said belonged to her, and the balance to her husband, and

that she acquired title to that by devise. She asks you to find here that the title in that land became vested in her, although the legal title was in Daniel Lutz, her husband; that it was an advancement to her, intended to be an advancement towards her share in her father's estate, and that the value of such advancement was to be $400, for which a note was given at that time; that at the time the title vested in her, it was agreed and was the intention that Lutz should hold a legal title to this part in trust for her, and that the $400, mentioned as the purchase money, should be an advancement upon her share in her father's estate, to be charged up and deducted from her share upon the distribution of the estate after the death of the father and mother, and that it was so charged and deducted; that the money arising from this sale, all that receipted for by Lutz, to the amount of $1,400, belonged to her, and was paid to her shortly after the same was received by her husband; that she kept it separate and apart from any money of her husband's; that at the time of the purchase from Porter she paid the first $100, and afterwards paid at different times of her own money $1,900 more. That is the theory of the defendants, and what they ask you to find.

The plaintiff asks you to find that the oral evidence given in court, by which this trust in favor of Mrs. Lutz is sought to be sustained, is inconsistent with the acts of the parties, that it is in flat contradiction of the deeds, the receipts and all of the written evidence, except perhaps the distribution account which was given here, and papers belonging to her share in the estate of her father.

[When a father advances money to his son or daughter, and takes a bond or note for its payment, the law presumes such transaction a debt and not an advancement. So too if interest is charged, the law presumes that it is a debt, and was a loan instead of an advancement. These are legal presumptions arising from the facts of the papers which have been given in evidence. The papers show for themselves, but the legal presumptions arise upon this.] [13] [The presumption of law is that the property belongs to the husband and not to the wife, and the evidence to establish in her a separate estate in this land by gift or advancement from her father must be clear and satisfactory, and sufficient to repel all adverse presumptions. Con-

tracts, notes, deeds, or other articles made at the time are the best evidence, not only as regards the ownership of title to land, but also as to who paid the purchase money.] [14]

Upon the part of the defendant, the will of the father is given in evidence, showing that there was due to her, or that she did receive in all the sum of $2,634. That is the whole share of her estate.

I might say to you that the notes we have spoken of, and all these papers, were in favor of the title of this land being in Lutz, so also were the assessments. They are simply items of evidence, but they are items which go to show title here. For instance, it is shown the whole number of acres was assessed to Daniel Lutz. After they came to this county and purchased the land down here, the deed for that was taken in Daniel Lutz's name, the land was assessed to him, and he paid the taxes. Those are items which go to point as to who was the owner of the land.

Mrs. Lutz was called and she tells you, among other matters, of the alleged advancement of the thirteen acres in Lawrence county, and the sale of it, and the $1,400 she realized, and how she kept it separate and apart; and with that, and with the money obtained from her father's estate, she tells you how she paid for this land, as she alleges, with her own money. Mr. Francis says that $100 was given to Lutz to vest in real estate, and the agreement was she was to have an interest in the farm according to the interest she put in. He tells you where she put the $1,400, and afterwards of her sending over to the executors to get the money.

Mr. Pyle, one of the executors, says that in March, 1884, he gave Lutz $550, and he took at that time, I think, Lutz, and his wife's note. Afterwards he gave him $520, and his note was given for that. The second note, was signed by Lutz alone. He says, too, these were taken out of her share in the estate. Also that the deceased had made advancements to his other children, in the same manner perhaps as he had to Mrs. Lutz.

Mr. Dindinger says that he wrote a will for Mr. Pyle, and that he spoke of advancements to different children. Mrs. Lutz was one of them; that there was an advancement to Mrs. Lutz, and that it should be taken out of her share. Then we have a disclaimer of Daniel Lutz for all the land except what he held

in trust for Henrietta Lutz. This is nearly all the testimony, gentlemen. There is a little more, but the whole testimony is about summed up in what we have indicated.

An advancement is a pure and irrevocable gift made by a parent to a child, in anticipation of such child's share in the parent's estate, and if such a gift is made, with the intention that it shall be an advancement, the title to the money or property vests in the child. If the intention existed at that time, and other matters, such as the payment of money, etc., as hereafter cited, existed, and the facts are proved by such evidence as we will say to you in a moment, that would vest a good title in Mrs. Lutz, and the creditors could not take it for an execution against Lutz for any debt of his.

The plaintiff here holds under the legal title, and the strong presumption is that the actual ownership of the land is in conformity with the legal title, and this presumption cannot be overthrown except by clear, full and satisfactory evidence. The evidence to overthrow these solemn deeds, made under men's hands and seals years ago, must be full, clear, unequivocal and satisfactory. [A resulting trust may be established or may be fastened upon a legal title by the payment of the purchase money at the time of the purchase, with the clear understanding that a trust shall exist], [11] [but when parties voluntarily or otherwise place their rights to property, or allow it to be done by another, in such a position that they can only establish that by an attack upon the written legal title, through the instrumentality of merely oral evidence, they cannot complain if they are held to that uniform measure of proof which will prevent frauds and perjuries, and secure double protection against the effects of frauds and perjuries to men who have purchased upon the faith of legal titles.] [12] Here the purchaser was a purchaser at the sheriff's sale, and he purchased with notice, and is not what is called in law an innocent purchaser.

Plaintiff's points and answers thereto among others were as follows:

1. After Caleb Pyle had passed the title to the thirteen acres of land in Lawrence county, by his deed to Daniel Lutz, in 1865, he could not several years thereafter, advance the same land to his daughter Henrietta, and thereby impress a trust therein in

her favor.   Such a trust could only be raised at the time the title passed to Daniel Lutz, her husband.   *Answer :* Affirmed. [1]

2. If Daniel Lutz, the husband, gave his note to Caleb Pyle in consideration for said thirteen acres of land, at the time the deed was made to him in 1865, payment of that note by Henrietta Lutz out of her share of her father's estate a number of years thereafter, would not raise a trust in the land in her favor. *Answer :* Affirmed. [2]

3. A trust in the land in controversy in this county could only be raised in favor of Henrietta Lutz by payment of the purchase money when the title passed and the deed was made from James Porter to Daniel Lutz.   If Daniel Lutz, the husband, paid the $1,100, paid at that time, any payment she might subsequently make would not raise a trust in her favor. *Answer :* Affirmed. [3]

4. When property is claimed, as in this case, by a married woman against the creditors of her husband, the presumption is strong that the husband paid for it, and that the property was his own, and the burden is upon her to prove by clear, explicit, unequivocal and satisfactory evidence that the purchase money was hers.   *Answer :* Affirmed. [4]

5. When, as in the case at bar, eleven years after land had been purchased in the name of a husband, and after the interest of the husband in such land has been divested by a sheriff's sale, the husband and wife, in the interest of the wife, attempt to hold and retain possession of such land as against the purchaser at the sheriff's sale, and in order to do so attempt by their own parol evidence to overthrow a written agreement for the purchase of land made thirty-four years ago in the name of the husband, which agreement was consummated twenty-nine years ago by a deed to the husband, long after the death of the grantor of the last mentioned land and after the death of others having knowledge of the contemporary facts, and when neither the husband nor wife can remember by whom the deed or agreement was prepared, the testimony of such husband and wife, not only on account of their interest in the suit, but on account of the impossibility of the human mind to retain accurately a recollection of events transpiring so long since, should be most carefully scanned by the jury, and are entitled only to the most guarded credence, while all presumptions of law arising from

the written evidence of the transaction should be given full weight by the jury. *Answer:* Affirmed. [5]

6. The fact that Caleb Pyle took first a written agreement and afterwards a note from Daniel Lutz, which in terms covered the price of the land in Lawrence county conveyed to him, raises in law a presumption against an advancement to Henrietta Lutz. *Answer:* Affirmed. [6]

8. If, as claimed by defendants, Caleb Pyle, deceased, by his will intended to direct that the note of Daniel Lutz should be taken from the share of Henrietta Lutz, then such will raises a presumption against a gift or advancement to Henrietta Lutz. *Answer:* Affirmed. [7]

9. The executors of the last will of Caleb Pyle, deceased, were not required by its terms to deduct from the share of Henrietta Lutz the note of Daniel Lutz for $420 given by him, as claimed by plaintiff, in payment of the land in Lawrence county, and such deduction, if permitted by Henrietta, was a voluntary payment of her husband's debt by her. *Answer:* That is so if you find that was his debt. They were not bound to do it, but if it was upon an agreement made long ago that it should be done, the executors might do it. [8]

Defendants' points and answers thereto were, among others, as follows:

9. The fact that the husband gave his note for the money, at the time it was advanced, would not convert his situation of trustee into that of a mere debtor. *Answer:* That is affirmed. That alone would not, but the giving of a note raises a presumption that the transaction was a loan and not a gift or advancement. [9]

13. If the jury further find that the debt on which the plaintiff claims title did not exist until over two years after that time, then the defendant, Mrs. Lutz, is entitled to a verdict for so much of the land as the amount of this money that she paid on the land bears to the whole purchase money. *Answer:* That is affirmed if the jury further find that the money was hers in her own right, either advanced to her or derived from her separate estate. [10]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1–14) above instructions, quoting them.

*J. S. Carmichael,* with him, *R. W. Dunn,* for appellants.—It is not necessary that the money of the wife should have gone into the land at the inception of the husband's title by an actual payment of it as of that date. It is enough if it be paid as instalments or incumbrances fall due, provided such payments are made in pursuance of the contract under which the title was acquired, and upon the agreement that she is to recover the title to so much as she pays for in exchange for her money: Gilchrist v. Brown, 165 Pa. 275; Light v. Zeller, 144 Pa. 582; Nixon's App., 63 Pa. 279; Williard v. Williard, 56 Pa. 119.

One who takes a deed in his own name for land paid for by another is a trustee by force and operation of law; not because he agrees to hold for the other party, but because he cannot hold for his own use without violating conscience, good faith and honesty: Lynch v. Cox, 23 Pa. 265; Hayes' App., 123 Pa. 110.

It is not a necessary and conclusive inference in all circumstances that when a husband and wife occupy land by joint residence and cultivation, the title can only be in the husband: Sill v. Swackhammer, 103 Pa. 7; Hottenstein v. Lerch, 12 W. N. C. 4; Miller v. Baker, 160 Pa. 172; s. c. 166 Pa. 414.

The acts of the parties at the time of the conveyance, recognized and confirmed by the subsequent acts and declarations of the father, are amply sufficient to justify the conclusion that the deed was, at the time of its execution, intended as an advancement: Miller's App., 107 Pa. 221; Merkel's App., 89 Pa. 340; Weaver's App., 63 Pa. 309; Myers v. Lease, 101 Pa. 172; Collins v. Leafey, 23 W. N. C. 264.

*T. J. McKean,* for appellee.—The 1st, 2d, 3d and 11th specifications of error relate to the manner of raising a resulting trust. The court was clearly right in affirming these points. It has been held by a long line of decisions that a resulting trust can only be raised or impressed upon a property at the time the title passes: Barnet v. Dougherty, 32 Pa. 371; Nixon's App., 63 Pa. 279; Bickel's App., 86 Pa. 211; Hayes' App., 123 Pa. 132; Crawford v. Thompson, 142 Pa. 551.

The idea of the advancement of the land is repelled by the fact that the writing itself called for the payment of $400 in money: Roland v. Schrack, 29 Pa. 125; High's App., 21 Pa.

283; Miller's App., 107 Pa. 221; Haverstock v. Sarbach, 1 W. & S. 390; Kreider v. Boyer, 10 Watts, 54.

The 4th, 5th and 14th specifications of error all relate to the proof required when a married woman claims property against the creditors of her husband. There was no error in affirming these points. The language of the points is mainly the language of this court: Keeny v. Good, 21 Pa. 349; Bradley's App., 29 Pa. 513; Winter v. Hartman, 37 Pa. 155; Baringer v. Stiver, 49 Pa. 131; Curry v. Bott, 53 Pa. 403; Silliman v. Haas, 151 Pa. 52.

OPINION BY MR. JUSTICE WILLIAMS, January 4, 1897:

The questions raised by the several assignments of error will be readily comprehended after a glance at the facts out of which they grow. The plaintiff is a purchaser at sheriff's sale of a farm sold as the property of Daniel Lutz. This proceeding was instituted by the purchaser for the purpose of obtaining possession. The defendant in the judgment concedes that such title as he had has passed by the sheriff's sale to the purchaser, but alleges that as to about twenty twenty-ninths of the title he held for the use of his wife, Henrietta Lutz, under a trust resulting from the payment of $2,000 of the purchase money by her upon a parol agreement that she should be an owner in proportion to the purchase money paid by her. To establish this trust it was incumbent on Mrs. Lutz to show by evidence that was clear and satisfactory, first, that she did pay a portion of the purchase money for the farm in controversy, as alleged; second, that it was paid upon an agreement that she was to have the title to the land, or such portion of it as she paid for; and third, that the money so paid belonged to her as her separate estate. Upon the trial of the cause Mrs. Lutz gave evidence tending to prove the payment of $2,000 of the purchase money, and that it was paid upon the agreement alleged. To show that the money was her own, and received from her father's estate, she proved by the testimony of several witnesses that not long after her marriage her father proposed to advance to her the sum of $400 in land if she and her husband would move upon the land and improve it. To this they both agreed. Her father had however the opinion that because the note of a married woman was not valid as an obligation

against her, so neither could she lawfully take a title to land. He proposed therefore to give a deed for the land to her husband, take his note for $400, the price of the land, and charge the note to her share in his estate by his will. This was done. Lutz and his wife went upon the land, lived upon it for more than twenty years, improved it, and at length sold it with an adjoining piece of land which her husband had purchased, and divided the money received according to their respective interests, she receiving $1,400 as her share. This together with the moneys received from her father's estate made up the sum she alleged was paid by her. If believed the testimony of the witnesses by whom these facts were shown was sufficient to justify the jury in finding in favor of Mrs. Lutz. The plaintiff alleged that this testimony was unworthy of credit because it was in apparent contradiction of the written documents, the deed, and note given at the time. The question for the jury was whether these papers were so explained and accounted for by the testimony as to overcome the presumption arising, prima facie, upon them, and establish the title of Mrs. Lutz in the thirteen acres conveyed by her father to her husband, but admittedly paid for out of her share in her father's estate. The first assignment of error complains that the learned judge erred in affirming the plaintiff's first point. In this point he was asked to say that if Caleb Pyle the father of Mrs. Lutz had passed the title to the thirteen acres to Daniel Lutz in 1865, he could not several years later advance the same land to his daughter so as to impress it with a trust in her favor. As an abstract proposition this might be unobjectionable, but as applicable to the facts of this case the point was misleading. No such question was presented on the evidence. There was no attempt to show any such effort on the part of Caleb Pyle as the point assumed.

The allegation of the defendant was that the conveyance to Lutz and the taking of his note as a memorandum was the method by which Pyle sought to secure the land to his daughter, and charge its value to her to be paid out of her distributive share of his estate. If this was believed it would not matter when the deed was made or the note taken. It was a gift to Mrs. Lutz. The answer of the learned judge to the plaintiff's third point is also clear error. It affirms that a resulting trust can be raised only by payment of purchase money at the time

the deed is made. If paid before, or after, the act of delivering the deed by the vendor it is ineffectual. Nixon's Appeal, 63 Pa. 279, cited as authority for this doctrine, does not support it. What was then held was that the mere advance of money to a purchaser after the purchase is complete will not raise a resulting trust. There was no pretense that the person who advanced money in that case to the purchaser was to take, or to hold, an interest in the title to the land purchased. It was advanced to the purchaser under a promise that if he would buy the property she "would help him pay for it." "Agreeing to help a person buy a farm is something entirely different," said Justice SHARSWOOD in that case, "from agreeing to join him in the purchase." The rule as we understand it is that the trust must be impressed on the title when it passes to the alleged trustee. It cannot be engrafted upon it afterwards. It must result from facts then existing which in equity turn the taker of a title into a trustee. In other words the agreement to advance the purchase money or a portion of it and take title to the land or to so much of it as the money advanced shall pay for, must precede or be contemporaneous with the purchase; and money subsequently paid in pursuance of such an agreement, under which the title was obtained, should be considered in determining the interest of him who advanced it: Gilchrist v. Brown et al., 165 Pa. 275. By way of illustration let us suppose that A and B agree with each other to purchase a given piece of real estate. The price asked is $10,000 payable one half in hand and one half at the end of one year. A undertakes to pay the first or advance payment, and B the other, and they agree that the title shall be made to both in common. Subsequently A makes the advance payment and directs the deed to be made to himself. Without knowledge of this fraud B, at the end of the year pays the remaining $5,000. Does it admit of doubt that he could call upon A for a conveyance of the equal one half part of the land to himself? His money was not paid until after the title passed to A but it was paid under an agreement which antedated the conveyance to A, and which made it the duty of A when the title came to him to convey an undivided half to B. The facts which made it a fraud in A to take the whole title without the knowledge of B, existed when the conveyance was made to A and the trust resulted from them, and fastened upon

the title the instant it rested in him. In this case the defendant alleged that she furnished the $100 paid upon the preliminary contract and the $1,000 paid at the delivery of the deed, upon the express agreement with her husband that she was to have an interest in the title corresponding to the amount of purchase money she should furnish, and that she subsequently furnished $900 more in pursuance of this agreement. If this was believed, the money was paid in time. There was not a scintilla of testimony tending to show that the money paid prior to, and at the delivery of the deed, was paid by Lutz, except as alleged by the defendant. The fifth assignment must also be sustained. The point to which it relates was argumentative, and seems to have been drawn for the purpose of securing from the court an indorsement of the line of argument the plaintiff was about to present to the jury upon the facts and the credibility of the witnesses, and it contained an assumption of the truth of the plaintiff's contention upon questions that were properly for the jury. The sixth and seventh assignments are sustained. The affirmance of these points should have been qualified and the jury told that the presumption arising from the form of the deed from Pyle to Lutz for the thirteen acres and the note for $400 signed by Lutz, was a presumption prima facie only, and capable of being rebutted, and if the testimony given by the defendant's witnesses explaining these instruments and the reason given by old Mr. Pyle for putting them in the form in which they were found is believed, then the presumption is rebutted and thereafter to be left out of the account. The twelfth assignment of error points out a clear mistake in regard to the measure of proof required. According to the official copy of the stenographer's notes of the trial certified to by him, and by the learned judge who tried the case, it appears that the jury was told that under the circumstances enumerated by the learned judge in his charge as those surrounding this case, a party could not complain if held to such a uniform measure of proof as would " secure double protection against the effects of frauds and perjuries to men who have purchased upon the faith of legal titles." A slip of paper signed by the stenographer was handed up at the argument, expressing an opinion that this instruction had been incorrectly transcribed by him. We cannot regard such a paper as of any value. The

charge has been examined, and its correctness, as it appears in the official copy of the stenographer sent up with the record, certified to by the judge who delivered it. The record is that to which we look, to which we must look and we know of no reason that would justify us in disregarding it in this case. The slip of paper handed up to us is no part of the record which it attempts feebly to qualify. Such a method of amending the record cannot be encouraged. It may be that the jury reached a correct conclusion upon the questions of fact in this case. Upon that subject we express no opinion. What we undertake to say is that the answers and charge of learned judge were of a character that might have misled them, and induced a verdict that would not have been rendered if the questions of fact on which the case depended had been distinctly and adequately presented to them as they should have been.

The judgment is reversed and a venire facias de novo awarded.