## Walker v. Provident Trust Company of Philadelphia et al.

*Resulting trust—Purchase money furnished by one person, payment made by another—The principle that passing of title and date of payment must be contemporaneous.*

1. Where decedent employed an attorney to collect a debt due his daughter from her husband, who was living apart from her and from whom she had been estranged, and entered into an agreement to purchase a home for her and her children, paying the down-money thereon from his own funds, believing that the debt had been, or would be shortly, collected by the attorney, and a few days thereafter received the debt from the attorney and used the money to meet subsequent payments, taking title to the property in his own name, under the advice of counsel, so as to relieve her from the necessity of having her husband join in the deed in case she resold the property, advancing from his own funds such further money as was necessary to complete the purchase, a resulting trust arose for the benefit of the daughter, enforcible against the decedent's executors, subject, however, to the repayment by her of the money so advanced from his own funds and interest thereon.

2. The principle that a resulting trust can only arise where the purchase money is furnished or paid at or before the time the title to the property passes as a part of the original transaction of purchase, does not apply to such a case.

Adjudication. C. P. No. 1, Phila. Co., March T., 1924, No. 10087, in Equity.

*H. Horace Dawson,* for plaintiff.

*J. Charles Murtagh* and *Arthur Littleton,* for defendants.

TAULANE, J., Oct. 21, 1927.—This case came on for hearing before the late President Judge Bartlett on June 8, 1927, but he died before he had an opportunity to prepare an adjudication.

Counsel for all parties have agreed that Taulane, J., may dispose of the matter with the same force and effect as if the testimony had been taken before him.

H. Horace Dawson, Esq., appeared for the plaintiff, and J. Charles Murtagh, Esq., and Arthur Littleton, Esq., for the defendants.

The bill alleges that the late William J. McMullin during his lifetime purchased a property at Ventnor, New Jersey, for his daughter, the plaintiff, using her funds to pay for it, but took title thereto in his own name to protect her, as she was then in litigation with her husband, and prayed that the

trustees and devisees under his will be ordered to convey the legal title of said property to the plaintiff.

From the pleadings and proofs, the court make the following findings of fact and conclusions of law:

### Findings of fact.

1. Since the filing of the bill, the plaintiff has remarried, and is now known as Mabelle P. Yarrow.

2. The full name of Marion Reineke, one of the defendants, is Marion Reineke Bretherton.

3. Sophie Jane Reineke, one of the defendants, and described as a minor, is now of age.

4. In February, 1921, and prior thereto, the plaintiff had marital difficulties with her then husband, H. Leslie Walker. She separated from her husband in February, 1921.

5. At the time of the separation, the plaintiff's husband owed her $10,000, which she had borrowed on a mortgage on her house at Rosemont, Penna., and loaned him.

6. Immediately upon the separation, the plaintiff, through her father, the late William J. McMullin, retained John R. K. Scott, Esq., to collect the $10,000 and represent her in her marital troubles with her husband.

7. Some time prior to March 31, 1927, the exact date does not appear, Mr. Scott succeeded in collecting from the plaintiff's husband the $10,000 due her, with interest, aggregating $10,477.17.

8. On March 31, 1921, Mr. Scott paid the plaintiff the amount so collected by handing to William J. McMullin, plaintiff's father, his several checks aggregating $10,477.17, drawn to the order of William J. McMullin, attorney in fact for Mabel P. Walker, which checks William J. McMullin endorsed and deposited to his credit in his bank account with the Provident Life and Trust Company.

9. At the time of the separation, the plaintiff and her three children were living in a cottage on Amherst Avenue, Atlantic City, owned by her husband. Her husband notified her to vacate the cottage.

10. Plaintiff's father then purchased for her a cottage situate at the southwest corner of Ventnor and Vassar Avenues, Ventnor, New Jersey, by entering into an agreement of purchase in his own name, dated March 24, 1921, whereby he agreed to pay $17,500 for the cottage, to be settled for within thirty days, and to be paid for as follows: $1000 upon the execution of the agreement, $2000 on or before April 19, 1921, $5000 in a first mortgage then thereon and to remain, and the balance of $9500 in cash.

11. William J. McMullin apparently paid out of his own funds the deposit of $1000 made on the execution of the agreement.

12. Mr. McMullin was represented in the purchase of the property and the preparation of the deed by John O'Neill, of Atlantic City.

13. Mr. McMullin informed Mr. O'Neill that he was buying the property for his daughter, and Mr. O'Neill advised Mr. McMullin that title should not be taken in the daughter's name on account of the trouble she was having with her husband, which might prevent her from selling, as her husband would have to join in the deed.

14. Mr. McMullin stated to Mr. O'Neill that he would consult his lawyer.

15. Thereafter and before the deed was made and practically about the time Mr. Scott gave the money to Mr. McMullin, Mr. McMullin told Mr. Scott that he was buying a property at Ventnor for his daughter and inquired

whether the deed should be in the name of a third person instead of his daughter. Mr. Scott advised him to put the property in his own name and not in his daughter's name, as the daughter might have difficulty in selling if the title was in her name, due to her differences with her husband.

16. Mr. McMullin made the second payment of $2000 on account on April 5, 1921, and the final payment of $9482.01 on April 23, 1921, when settlement was made and the deed taken in the name of Mr. McMullin.

17. Neither Mr. McMullin nor his estate has ever repaid to the plaintiff the said sum of $10,477.17 which Mr. McMullin received from Mr. Scott as plaintiff's attorney in fact.

18. From the time of the purchase in 1921 to the present time, the plaintiff has been in exclusive control and possession of the property, has paid all interest on the mortgage, taxes, water rent and repairs. She resided in it until 1924, since when she has rented it and collected the rents.

19. Mr. McMullin, in 1922, consulted Mr. Benjamin F. Jones, of the Provident Life and Trust Company, about a codicil to his will. He explained to Mr. Jones that he had bought the property at Ventnor for his daughter Mabel; that his daughter's money had paid for it, and that he had taken the title in his own name to protect his daughter against any interference of her husband, from whom she was separated, and requested Mr. Jones to prepare a codicil to his will to the effect that, upon his death, the Ventnor property should go to his daughter Mabel free and clear of all inheritance taxes. Mr. Jones prepared the codicil, but it was never signed.

20. Mr. McMullin died on March 26, 1923. On the day he died, Mr. Jones was requested to call and bring with him the codicil for Mr. McMullin's signature. Mr. Jones called to see Mr. McMullin with the codicil, but Mr. McMullin refused to sign it, stating that he would go to Mr. Jones's office in a few days to sign it. At the time, Mr. McMullin did not realize his condition, for he died within fifteen or twenty minutes thereafter.

21. Mr. McMullin repeatedly told divers persons that the property at Vassar and Ventnor Avenues, Ventnor, belonged to his daughter Mabel; that her money went into its purchase, and that he had the title put in his own name for her protection against her husband.

22. Mr. McMullin used the sum of $10,477.17, being the amount of plaintiff's money received by him from Mr. Scott, in the purchase of the Ventnor property.

23. Mr. McMullin, in purchasing the Ventnor property, acted as plaintiff's agent.

24. Mr. McMullin advanced or loaned to the plaintiff, to complete the purchase, $2004.84, representing the difference between $12,482.01, the amount in cash paid for the property, subject to a $5000 mortgage then thereon, and $10,477.17, the amount of plaintiff's money in Mr. McMullin's hands.

25. Mr. McMullin had no interest in the property, and the title was in his name solely for the plaintiff's protection.

26. Neither Mr. McMullin in his lifetime nor his estate since his death have ever claimed or asserted any interest in the property or exercised any acts of ownership over it, neither he nor his estate has ever received any of the rent when it was rented, nor did he or his estate ever pay the interest on the mortgage, the taxes, water rent or repairs.

27. Mr. McMullin's net estate exceeded $300,000.

28. Mr. McMullin entered into the agreement to purchase the property at Ventnor for the plaintiff in view of and reliance on the money Mr. Scott was retained to collect and did collect for the plaintiff from her husband.

29. The $2004.84 which Mr. McMullin advanced out of his own funds toward the purchase of the property was a loan or advance to the plaintiff which has never been repaid.

### Discussion.

The plaintiff does not claim ownership of the Ventnor property by gift from her father, for if she did her claim would fall because she has not shown facts sufficient to sustain a parol gift of real estate from parent to child: Caldwell v. Caldwell, 24 Pa. Superior Ct. 230; Brewer v. Lohr, 35 Pa. Superior Ct. 461; Young v. Glendenning, 6 Watts, 509; Wack v. Sorber, 2 Wharton, 387; Dorr v. Leippe, 286 Pa. 17, and Moore v. Small, 19 Pa. 461.

On the contrary, she alleges her father used her money to purchase the property and took title in his own name to protect her against her husband, which facts, she claims, raise a resulting trust in her favor. Where one person pays the purchase money of real estate and the title is taken in the name of another, a resulting trust arises, in the absence of evidence to the contrary, in favor of the person paying the purchase money: Bispham's Equity (10th ed.), 146.

The evidence convinces us that plaintiff's father used the money he received as her agent from Mr. Scott in the purchase of the Ventnor property. The defendants do not seriously controvert this, but contend that, as her father entered into the agreement of purchase before he received the money from Mr. Scott, the plaintiff's money was not contributed or used at the time of the inception of her father's title.

It is true a resulting trust can only arise where the purchase money is furnished or paid at or before the time the title to the property passes as a part of the original transaction of purchase: Cross's Appeal, 97 Pa. 471; Barnet v. Dougherty, 32 Pa. 371, and Beringer v. Lutz, 179 Pa. 1.

And in some cases the inception of title may be the equitable title acquired by a purchaser under his agreement of purchase prior to settlement and delivery of deed. See Musselman v. Myers, 240 Pa. 5, 8.

The rule invoked by the defendants has no application to the facts of this case. Plaintiff's father was her agent or representative. She left it to him to engage Mr. Scott to collect the money due her from her husband, and when it was collected, Mr. Scott paid it to her father as her agent, and not to her. While it was on March 31, 1921, when Mr. Scott paid the plaintiff's money to her father, it is likely Mr. Scott received it some days before and probably informed plaintiff's father of its collection. However this may be, plaintiff's father was her agent in purchasing the Ventnor property; he purchased it not for himself, but for her. There is nothing to justify the notion that the plaintiff's father made the initial deposit to secure for himself an interest in the property. He made it on behalf of the plaintiff. The agreement of sale is dated March 24, 1921, and the money was received by plaintiff's father from Mr. Scott on March 31, 1921. We have no doubt plaintiff's father entered into the agreement knowing that the plaintiff's money would be shortly forthcoming from Mr. Scott and intended at the time to use, as he did use, the money in making the purchase. At the time the second and third or final payments were made and the deed delivered, plaintiff's father had in his possession her money.

If plaintiff's money was used in the purchase, and we have found it was, it was used at the inception of plaintiff's father's legal title. The use of her money was part of the original transaction of purchase.

The case at bar in this respect is quite like the case of McLaughlin v. Fulton, 104 Pa. 161.

Plaintiff's father apparently contributed out of his own funds some $2000 towards the purchase, because the plaintiff makes no claim of any contribution beyond what was received from Mr. Scott. Her father has never been repaid. Ordinarily, the resulting trust in favor of the plaintiff would be limited to her contribution to the purchase money, unless the evidence shows that the contribution made by her father was an advance or loan to her. Her father took upon himself to buy the property for her, and in doing so acted as her agent. He had no thought of buying the property for himself, and originally had no idea of putting the title in his own name. He had enough foresight to know that the title should not be in his daughter's name, due to her unfortunate differences with her husband. At first, he intended to put the title in the name of the Provident Trust Company or some third person until he consulted Mr. Scott, who advised him it would be better to put the title in his own name rather than a trust company or third person.

Title was put in his name, not to have an interest in the property, but to protect his daughter.

The law is clear that a resulting trust does not arise in favor of an agent authorized to purchase a property who pays part of the purchase money with his own funds. Such a payment is a loan or advance to the principal, and such a contribution to the purchase money does not create a resulting trust: Schrager v. Cool, 221 Pa. 622, 625.

We are clear the plaintiff's father had no interest in the property, but the plaintiff is indebted to him for his advance, as there is no evidence or suggestion that he made a gift of it to the plaintiff.

## Conclusions of law.

1. The plaintiff is the absolute owner of premises situate at the southwest corner of Ventnor and Vassar Avenues, Ventnor, New Jersey.

2. William J. McMullin had no title or interest in said premises, the legal title being put in his name solely and exclusively to protect the plaintiff against her husband, from whom at the time she was separated and with whom she had marital differences.

3. William J. McMullin advanced to the plaintiff $2004.84 to complete the purchase of the property.

4. The plaintiff is indebted to the estate of William J. McMullin for said sum of $2,004.84, with interest.

## Decree.

And now, to wit, Oct. 21, 1927, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. The defendants be and hereby are ordered and directed to grant and convey to the plaintiff the legal title to said premises situate at the southwest corner of Ventnor and Vassar Avenues, Ventnor, New Jersey, more particularly described in the bill, under and subject only to the present mortgage of $5000 thereon.

2. The plaintiff pay to the executors of the will of the said William J. McMullin the sum of $2004.84, with interest at the rate of 6 per cent. per annum from April 23, 1921, and plaintiff shall not be entitled to a conveyance of the legal title of said premises unless and until she pays said sum, with interest, to said executors.

3. Each party shall pay her and their own costs.

The parties have presented requests for findings of fact and conclusions of law, which are filed herewith with the answers thereto.

And now, to wit, Oct. 21, 1927, the prothonotary is directed to enter the above decree *nisi,* and to notify the parties in interest of the filing of this adjudication, and that, unless exceptions are filed thereto within ten days, the above decree will be entered as a final decree.