## Smith, Appellant, *v.* Smith.

Argued May 8, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*Louis Vaira,* for appellant.

*Harry H. Meizlik,* for appellee.

PER CURIAM, June 27, 1939:

This was a bill in equity brought on June 20, 1936,
by a mother against her son to have a resulting trust
decreed in her favor as to real estate purchased in the

son's name on June 18, 1921. She averred that she purchased the property with her funds, but title was taken in the name of her son at the request of her husband, who died in January, 1936. She did not allege in her bill that she did not know of the title being taken in her son's name nor that she had not consented to its being done.

The defendant in his answer denied that the real estate in question had been purchased by the plaintiff with her funds, and averred, on the contrary, that he had purchased it with money saved or earned by him or raised by his own efforts.

The learned trial judge, sitting as a chancellor, found that the defendant George W. Smith had purchased the property for $5200, of which $1000 had been paid in cash and the balance raised by two mortgages,—a first mortgage of $2500 to the Fidelity Title & Trust Company, and a second mortgage of $1700 to William Craig. Both of these mortgages have since been paid. Of the $1000 cash, the chancellor found $100 had been hand money paid at the execution of the agreement of sale, of which the father, George H. Smith, had paid $50 and the remaining $50 had been paid by a liberty bond of defendant's sister, LaVerne Smith. The remaining $900 was made up of $600 paid by defendant out of the proceeds of sale of stock which he had in the Mortgage Motor Company, which he sold through one Carl Herklotz, and $300 by a loan on an insurance policy on his father's life in the Missouri Life Insurance Co., which defendant subsequently repaid to the insurance company, as was shown by the checks which he produced.

The family all lived together in the house and turned over their earnings to the mother, who advanced money to them as they needed it and made some payments on account of the mortgages, although the defendant also produced receipts showing that he too had made payments on both mortgages.

Defendant claimed that he paid practically all the

taxes and repairs on the property until 1931, when he married and left the home and told his father and mother they might live in the property if they would pay the taxes and upkeep, which they have since done. The son was engaged in remunerative employment all that time.

No attempt was made to have a resulting trust declared for over fifteen years, nor until after the death of the husband and father, George H. Smith, at whose request plaintiff averred the title had been taken in the son's name.

The chancellor, in discussing the case, stated that the burden of proof to establish a trust by parol evidence in the face of a written deed is strongly upon the one who affirms the trust (*Strimpfler v. Roberts,* 18 Pa. 283) ; that the advance of money afterwards to make payments on the property will not be sufficient to create a resulting trust, if it was the intention at the time of the original purchase that title be taken in the name of defendant; that to create a resulting trust, the payment of purchase money should be made at the time the title was acquired (*Cross' Appeal,* 97 Pa. 471) ; that no oral agreements and no payments before or after the title is taken will create a resulting trust unless the transaction is such at the moment title passes that a trust will result from it (*Hayes' Appeal,* 123 Pa. 110, 16 A. 600).

The chancellor made the following conclusions of law:

"(1) The testimony shows that although the mother furnished part of the money for the purchase of the property, [that is, helped to pay off the mortgages], there was an intention that the title be taken in the name of George W. Smith, the oldest son.

"(2) The testimony to set aside the conveyance is not clear, precise and indubitable, but is very conflicting.

"(3) No attempt to have a resulting trust declared was made for fourteen years after the conveyance, and

no sufficient evidence is offered to excuse the delay.

"(4) The plaintiff was guilty of laches.

"(5) The bill should be dismissed."

To this adjudication the plaintiff filed twenty-six exceptions to the findings of fact and twelve exceptions to the conclusions of law and decree nisi.

The court in banc disposed of them in the following opinion by the trial judge: "The testimony in this case is so contradictory that it is hard to reach a conclusion. By indisputable evidence (checks, etc.) Lillie I. Smith paid part of the purchase money [that is, helped to pay off the mortgages]; how much, is difficult to ascertain. On the adjudication we dismissed the bill largely on the ground of laches. This is an equity case, and we feel that we should do equity. Under the prayer in the bill for general relief we will make an order that the bill be dismissed upon the payment of $750 to Lillie I. Smith, which we believe will compensate her for any amount she has expended over and above whatever she may have advanced because of natural love and affection for her son.

"DECREE

"And now, to wit, November 14, 1938, this matter came before the court, and after argument, and upon consideration of the same, it is hereby ordered and decreed that upon payment of the sum of $750 by the defendant to the plaintiff the bill be dismissed, at the cost of the plaintiff.

"All exceptions inconsistent with this order are hereby dismissed."

Plaintiff appealed.

As a matter of strict equity practice the court should have disposed of the exceptions and made or adopted such findings as would support its final decree; but there are circumstances present which support the suggestion that the final decree was in consonance with an agreement of the parties, assented to by their respective counsel. The judge who wrote the opinion so under-

stood the matter but said nothing about it in his opinion with the view of avoiding any future bickering and argument between the parties. The result did not work out as he expected.

The appellant has not seen fit to print the testimony in the record. We are unable, therefore, to judge whether or not it supports the findings of fact of the chancellor. If it does, the decree should be affirmed, for the dismissal of the exceptions to the findings, except as to the sum of $750, to be paid plaintiff, would amount to an approval by the court in banc of the findings of fact of the chancellor, except to the extent modified by the court; and the findings of fact of a chancellor, when approved by the court in banc, will not be reversed by an appellate court except for clear error.

There would be no point in reversing the decree and sending the case back to the court below with instructions to pass specifically and seriatim on the exceptions filed by plaintiff to findings of fact and conclusions of law of the chancellor,—which is the most that we could do in this case—, if the testimony in the record supports those findings and conclusions or sustains the action of the court in banc.

As the appellant is responsible for the record before us, she must accept the consequences flowing from it.

The appeal is dismissed at the costs of the appellant.