## Policarpo, Appellant, v. Policarpo.

Argued January 17, 1963. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

544

*Ralph Schwartz,* for appellant.

*James Iannucci,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, March 19, 1963:

This is an appeal from a final decree of the Court of Common Pleas No. 5 of Philadelphia County, dismissing a complaint in equity seeking to establish a resulting trust.

Appellant is the fiduciary of her husband's estate and the moving party in this proceeding. She seeks to establish that appellees (decedent's two daughters by a prior marriage) took legal title to the realty in question as trustees for their father and now hold it for the benefit of his estate. The property originally was purchased by decedent in March of 1920, in his own name. He and his family occupied the dwelling from that time until his death in November, 1960. In September of 1941, the mortgage on the property was foreclosed,[1] and on March 23, 1942, the purchasers at sheriff sale conveyed the property to appellees[2] for the price

---

[1] Decedent had been encountering financial difficulties, and prior to foreclosure a $10,000 judgment had been entered against him.

[2] The two adult daughters of decedent, then single, were residing with the family. Decedent did not marry appellant until 1948.

of $2,600. Six hundred dollars was paid in cash and the balance secured by ($2,000) mortgage executed by appellees.

Appellant may prevail only if it is established that the conveyance of the property on March 23, 1942,[3] created a resulting trust in decedent's favor. "A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein . . .". Restatement (2d), Trusts, §404 (1959) [hereinafter Restatement]. Such a resulting trust may be created if decedent used his own funds or provided the money to purchase the property and directed the sellers to transfer the property to his daughters.

The primary question, therefore, is whose funds were used to make the purchase—was the purchase money that of decedent, as appellant urges, or was it from funds of the grantee-daughters, as they insist.

The well-established and consistently applied standard of the quality of the evidence required to prove an oral trust, is that it must be " '. . . clear, direct, precise and convincing.' " *Petro v. Secary Estate,* 403 Pa. 540, 543, 170 A. 2d 325 (1961); *Moffitt v. Moffitt,* 340 Pa. 107, 110, 16 A. 2d 418, 419 (1940). Recently this Court, in reaffirming this essential quality of proof, pointed out in *Sechler v. Sechler,* 403 Pa. 1, 7, 169 A. 2d 78, 81 (1961): "Unless the evidence equates this standard a parol trust cannot be established. The reason for the

---

[3] This is the important date to keep in mind in considering the evidence. As early as *Beringer v. Lutz,* 179 Pa. 1, 12, 37 Atl. 640, 641 (1897), this Court said: "The rule . . . is that the trust must be impressed on the title when it passes to the alleged trustee. It cannot be engrafted upon it aferwards. It must result from facts then existing which in equity turn the taker of a title into a trustee."

rule is evident: unless the evidence of the existence of an oral trust is of the highest probative value, equity should not act to convert an absolute ownership into an estate of lesser quality."

Appellant asserted that decedent (whom she married six years after the conveyance) had advanced the purchase price and placed title in the names of his daughters because of the judgment entered against him.[4] She maintained also that her husband paid all mortgage installments and liquidated that obligation in full. To support this claim of ownership, evidence was offered that decedent, from 1946 until his death, paid the real estate taxes, water and sewer charges, insurance and other bills in connection with the property.

Appellees, on the contrary, testified that the cash down payment on the purchase price, payment of settlement costs, all monthly mortgage installments and the final balance payment of $1,400 in July, 1946, were made by them entirely from their own funds. They agree that beginning in 1946 (after both were married and left the family residence), their father paid the current property costs such as taxes, water and sewer charges and the like. These payments, they testified, their father agreed to make in lieu of rent.

On the basic issue, the chancellor found as a fact that decedent purchased the property entirely with his own funds and requested that legal title be placed in the names of his daughters, to be held in trust for himself. The decree nisi directed appellees to transfer the property to the decedent's estate. The court en banc sustained exceptions to the chancellor's findings and adjudication, dismissed the complaint, and entered

---

[4] The record reveals no effort to transfer title following decedent's marriage in 1948 or during the next 12 years prior to his death.

judgment for appellees. This the court did on the ground that appellant failed to produce sufficient evidence of the required quality and persuasiveness to establish an oral trust.[5] We are in complete accord with this determination. The general nature of appellant's evidence is such that, viewed even in the most favorable light, it falls very far below the standard of evidence and the quality of proof required to establish the existence of a resulting trust.

Examination of the whole record reveals that the evidence offered by both sides (particularly that dealing with the circumstances surrounding the conveyance of 1942) was rather vague, uncertain and inconclusive (even with allowances for the 20 year lapse). On the vital question of who supplied the purchase money, the record contains little more than mere statements by each of the parties asserting their respective claims.

It is extremely clear that appellant's evidence fails by a substantial margin to reach the level of affirmative persuasiveness required to prevail in this action. This conclusion is easily reached without resort to the presumption of right which exists in favor of appellees, in whom the legal title is vested. See *Sechler v. Sechler,* supra. Likewise, resort need not be had to the presumption that the conveyance to the daughters represents a gift. See Restatement, §442.

Were we to accept appellant's contention that decedent furnished the purchase price and had title taken in the names of his daughters because of the existence of the judgment against him, we would, nevertheless, still be obliged to arrive at the same conclusion. This result obtains even though this aspect of the contro-

---

[5] The chancellor sitting with the court en banc did not dissent from that court's findings and conclusions which were contrary to his as the hearing chancellor.

versy was not raised or argued. The admitted and obvious purpose of the conveyance was to prevent decedent's judgment creditor from reaching the property. Such a device is illegal. An intended trust ". . . is invalid if the purpose of the settlor in creating the trust is to defraud his creditors." Restatement, §63.[6] Under similar circumstances, a resulting trust does not arise. See Restatement, §444. Equity will not aid a party in the recovery of property so conveyed.

Decree affirmed. Appellees to pay cost.

---

[6] The transferees, as daughters of decedent, are not affected by the unjust enrichment factor discussed in Sections 422 and 444 of the Restatement; they are favored with the legal presumption of a gift to them. See Restatement, §442.