418 A.2d 523

Alex H. GRUBB and Clara M. Grubb

v.

Felix J. DELATHAUWER and Vilma R. Delathauwer,
Appellants.

Superior Court of Pennsylvania.

Argued June 18, 1979.

Filed Jan. 18, 1980.

David B. Keeffe, Sayre, for appellants.

Evan S. Williams, Troy, for appellees.

Before HESTER, HOFFMAN and CATANIA, JJ.*

HOFFMAN, Judge:

Appellants contend that appellees failed to meet their burden of proving the existence of a resulting trust for their benefit in certain real property. We disagree and, accordingly, affirm the order of the lower court.

In October of 1970, appellees, Alex and Clara Grubb,[1] executed an agreement to purchase a parcel of real property in Bradford County, Pennsylvania, from Edward and Margaret Walsh. The property consisted of approximately fifty–five acres, with a four–bedroom house and a barn. The total purchase price of the property was $17,200; the Grubbs paid $250 as a deposit when they signed the purchase agreement. After executing the agreement, the Grubbs were unable to obtain the financing needed to complete the

* President Judge FRANCIS J. CATANIA of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

1. Alex and Clara Grubb separated from their legal spouses approximately twenty years ago and have lived together as husband and wife since that time.

purchase, and they turned to appellants, Felix and Vilma Delathauwer, for assistance. (Mrs. Delathauwer was Clara Grubb's mother.) Shortly thereafter, on December 29, 1970, the Grubbs and the Delathauwers executed two uncaptioned documents relating to the purchase of the Walsh property. The documents read in their entirety as follows:

[Plaintiffs' Exhibit 8]

December 29, 1970

We, Alex H. B. and Clara M. Grubb, (husband and wife), of 1537 13th St., Fort Lee, N.J. 07024, hereby request that the names of Felix J. and Vilma R. Delathauwer of R.D. # 2, Wellsburg, N.Y. (mother and father of Mrs. Grubb) be put on the Deed because it is their wish as they are putting up their property in Ridgebury Township for security and are signing a judgment note for the down payment with Edward W. and Margaret M. Walsh of R.D. # 2, Sayre, Pa. and being that they will have all the equity in the purchase of the Walsh property, we hereby give up and waiver [sic] all rights in the purchase of this property to Mr. and Mrs. Delathauwer.

The two hundred and fifty dollar ($250) deposit that we have given on the Walsh property on Purchase Offer Agreement No. E 72038 we would like used toward the Closing Cost for we are going to pay all the Closing Cost for Mr. and Mrs. Delathauwer.

⟋       s/ Alex H. B. Grubb
s/ Clara M. Grubb

[Plaintiffs' Exhibit 9]

December 29, 1970

We, Felix J. & Vilma R. Delathauwer, (husband and wife) of R.D. # 2, Wellsburg, NY, (father and mother of Mrs. Grubb), have decided that we want our name on the Deed as long as we are going to sign the Mortgage that includes our property in Ridgebury Township and the Walsh property in the same Township as security and being that we are going to sign the Judgment Note for

the Down Payment with Mr. & Mrs. Walsh of R.D. # 2, Sayre, Pa. and hereby offer to purchase the same property with the same terms as set forth in the Purchase Offer Agreement No. E 72038 signed the 3rd day of October 1970 by Alex and Clara Grubb providing they pay the Closing Cost.

> s/ Felix J. Delathauwer
> s/ Vilma R. Delathauwer

On December 31, 1970, the Delathauwers purchased the Walsh property for $17,200 and received the deed thereto. Financing for the transaction was arranged as follows: The Delathauwers secured a mortgage at the First National Bank of Troy (Pennsylvania) in the amount of $13,000. The mortgage encumbered the Walsh property as well as other real property which the Delathauwers owned. In addition, the Delathauwers executed a purchase money mortgage to the Walshes in the amount of $4200. Upon the subsequent sale of certain property which the Delathauwers owned in New Jersey, the Delathauwers satisfied this purchase money mortgage by direct payment to the Walshes. The Grubbs applied their initial $250 deposit to the closing costs and attorney's fees and advanced approximately $150 more to cover the balance of such costs.

After the sale to the Delathauwers, the property remained unoccupied until June, 1972, when the Grubbs took up residence. The Grubbs have lived there continuously since that time. During the period in which the house was vacant the Grubbs visited the property frequently to work on improvements. Since December, 1970, the Grubbs have made substantial improvements to the property at their own expense. Moreover, the Grubbs assumed sole responsibility for all expenses relating to the property since it was purchased from the Walshes. They have paid all installments due on the Delathauwers' $13,000 mortgage with the First National Bank of Troy. They have also made all insurance, tax, and utility payments on the property, and have treated the property as their own on their federal income tax returns. The Delathauwers, on the other hand, have never occupied

the property, nor have they paid any expenses relating to the property other than the $4200 purchase money mortgage to the Walshes.

In the summer of 1976, the Delathauwers informed the Grubbs that they intended to sell the property in question. The Grubbs promptly filed suit in equity, seeking imposition of a constructive or resulting trust on the property in their favor. The Grubbs contended, in essence, that they held equitable title to the property, that the Delathauwers' involvement in the purchase of the property constituted a loan to them, and that the deeding of the property to the Delathauwers was a mere device to secure repayment of that loan. The Delathauwers, on the other hand, contended that they held both legal and equitable title to the property and that the Grubbs were merely their tenants. The lower court found that the Delathauwers had loaned the Grubbs $4200 toward the purchase of the property, of which the Grubbs had repaid $720, and concluded that the Delathauwers held legal title to the property upon a resulting trust for the benefit of the Grubbs. Consequently, the lower court ordered the Delathauwers to transfer legal title to the Grubbs upon the latters' repayment of $3480, the balance of the $4200 loan, plus interest. The Delathauwers have appealed from this order.

> As a general rule, "[w]here a transfer of property is made to one person and the purchase price is paid by another a resulting trust arises in favor of the person by whom the purchase price is paid." Restatement (Second) of Trusts § 440 (1959) . . . . This rule is based upon an inference that "the purchaser does not intend that the transferee should have the beneficial interest in the property, but that the purchaser himself shall have the beneficial interest." Restatement (Second) of Trusts, Introductory Note to Topic 4, at 391 (1959).

*Masgai v. Masgai*, 460 Pa. 453, 458, 333 A.2d 861, 864 (1975) (citations omitted). Moreover, "[i]t is well established that when a person pays the purchase price for a conveyance made to himself as a loan to another, there exists a resulting

trust in favor of the person to whom the loan was made. *Arndt v. Matz,* 365 Pa. 41, 73 A.2d 392 (1950); *Gates v. Keichline,* 282 Pa. 584, 128 A. 490 (1925); see V Scott on Trusts, § 448 (3rd Ed. 1967)." *Nirmaier v. Hamilton,* 467 Pa. 355, 358, 356 A.2d 788, 789 (1976). *See also* Restatement (Second) of Trusts § 448 (1959). Comment (a) to § 448 of the Restatement (Second) of Trusts explains that in such a situation

> the result is the same as though the transferee first lent the amount of the purchase price to the borrower and the borrower then paid the amount so borrowed to the vendor and the conveyance was then made by the vendor to the lender. Although the purchase price is not paid directly by the borrower to the vendor, it is paid for him by the transferee and the borrower is in substance the person who pays the purchase price.

Accordingly, in *Nirmaier v. Hamilton, supra,* our Supreme Court held that a resulting trust existed in favor of the appellants where, pursuant to an oral agreement between the parties, the appellees purchased a farm upon a mortgage, and the appellants occupied the premises and paid closing costs attendant to the sale as well as all mortgage installments and taxes on the property. The appellants had previously owned the farm but had lost it after defaulting on their mortgage. The Court found that these facts "clearly indicate that the oral agreement between the parties was one in which the appellees were to acquire title for the benefit of the appellants, and to hold title only until the appellants repaid the purchase price." *Id.,* 467 Pa. at 358, 356 A.2d at 789–90. *See also McHenry v. Stapleton,* 443 Pa. 186, 278 A.2d 892 (1971); *Gates v. Keichline,* 282 Pa. 584, 128 A. 490 (1925).

The Delathauwers contend that the Grubbs failed to meet their burden of proving the existence of such a resulting trust. It is true that "[o]ne who seeks to establish the existence of a resulting trust bears a heavy burden of proof; the evidence must be 'clear, direct, precise, and convincing.'" *Masgai v. Masgai, supra,* 460 Pa. at 460, 333

A.2d at 865 (quoting *Policarpo v. Policarpo,* 410 Pa. 543, 189 A.2d 171 (1963)). We are satisfied, however, that the Grubbs have met their burden. The present case is factually quite similar to *Nirmaier v. Hamilton, supra.* The Grubbs, unable to obtain financing on their own, enlisted the aid of the Delathauwers to complete the purchase of the subject property. The Delathauwers obtained mortgages and had the property deeded to them as security. Thereafter, the Grubbs were the sole occupiers of the property and made all mortgage, tax, insurance, and utility payments, as well as numerous capital improvements at their own expense. Furthermore, the Grubbs' claim of equitable ownership is buttressed by the testimony of a disinterested witness, the vendor of the subject property, Edward Walsh. Walsh testified as follows:

> Mrs. Delathauwer told me that she was buying the place for them people or for the Grubbs. Now whatever kind of a deal they had about paying it off, I don't know. I wasn't interested in that, I wasn't then and I am not now. But she said she was buying that place and for them people.
>
> .  .  .  .  .
>
> Yes, her daughter, that is who she said she was buying it for.

In *McHenry v. Stapleton,* 443 Pa. 186, 278 A.2d 892 (1971), our Supreme Court found similar testimony of a disinterested person particularly persuasive evidence of the existence of a resulting trust. *Id.,* 443 Pa. at 192, 278 A.2d at 895. Finally, the Delathauwers' suggestion that the Grubbs were their tenants and that the Grubbs' mortgage, tax, and insurance payments constituted rent finds no support in the record. The chancellor expressly found as a fact that the Delathauwers never reported any rental income from the property on their federal income tax returns. Taken together, these facts provide ample support for the lower court's conclusion that the Delathauwers' financial intervention in the purchase of the property constituted a loan to the Grubbs, and that the Delathauwers therefore held legal title to the property as trustees for the Grubbs' benefit.

■ The Delathauwers contend that the chancellor failed to accord sufficient weight to plaintiffs' Exhibits 8 and 9 (the texts of which are reprinted, *supra*). They assert that these documents manifest the parties' intention that no resulting trust should arise. Our Supreme Court has adopted § 441 of the Restatement (Second) of Trusts (1959), which states that "[a] resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise." *Masgai v. Masgai, supra,* 460 Pa. at 458, 333 A.2d at 864. *See also Zahorsky v. Leschinsky,* 394 Pa. 368, 372, 147 A.2d 362, 365 (1959). In this case, however, we find no such intention expressed in the documents in question. Rather, we concur fully with the chancellor's appraisal of the documents:

> The document [plaintiffs' Exhibit 8] is so ambiguous on its face as to be amicable to any interpretation one might wish to suggest. The defendant[s] contend . . . that the purpose of this document is to "release and waive all rights and equity in a property in order to completely negate any future claim of such signatory party." This purpose is not stated on the face of the document, and if such were the intent of the parties, it could not be established without the use of parol testimony. . . .
>
> The very existence of the documents . . . tends to imply that an unusual turn of events was occurring. . . No such document[s] would be necessary if the Delathauwers were making an outright purchase. . . . The existence of the documents . . . forces one to a conclusion that the parties intended a different arrangement than that of landlord and tenant.

Accordingly, we hold that the chancellor gave the documents all the weight to which they were entitled.[2]

Order affirmed.

2. The Delathauwers contend also that even if the transaction between the parties gave rise to a resulting trust, such trust had an illegal purpose (*i. e.,* to defraud the legal spouse of Alex Grubb), and

therefore was invalid. We express no opinion on the merits of this contention, however, because the Delathauwers have failed to preserve it for our review. The Delathauwers' exceptions to the decree nisi nowhere suggest that the chancellor erred in not finding an illegal trust purpose. Accordingly, the issue has been waived. Pa.R. C.P. 1518. *See, e. g., Turnway Corp. v. Soffer*, 461 Pa. 447, 456, 336 A.2d 871, 875 (1975).