**In re the BURNLEY WORKSHOP OF THE POCONOS, INC.**

**CARBON–MONROE–PIKE MENTAL HEALTH/MENTAL RETARDATION PROGRAM, Appellant,**

v.

**BURNLEY WORKSHOP OF THE POCONOS, INC., Northeastern Bank of Pennsylvania, Security Bank and Creditors Committee, Appellees.**

Civ. No. 85–0210.

United States District Court, M.D. Pennsylvania.

Sept. 27, 1985.

---

Mark S. Love, Daniel M. Corveleyn, Stroudsburg, Pa., for appellant.

Robert C. Nowalis, Wilkes-Barre, Pa., for Northeastern Bank.

Stephen McBride, Milford, Pa., for Security Bank.

Albert H. Aston, Jr., Wilkes-Barre, Pa., for debtor.

William H. Robinson, Jr., Stroudsburg, Pa., for Creditors Comm.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Petitioner, Carbon-Monroe-Pike County Mental Health/Mental Retardation Program [MH/MR], filed this petition for review of an Order in bankruptcy which rejected petitioner's request to convey to it certain assets consisting of real estate and automobiles owned of record by Burnley Workshop of the Poconos, Inc. [Burnley]. Petitioner bases its request on the assertion that it provided the money for these purchases. Opposing the petitioner are Northeastern Bank of Pennsylvania [Northeastern] and the Official Creditors' Committee of Burnley. The briefs having been filed, the petition is now ripe for disposition. For the reasons set forth below, the decision entered by the Bankruptcy Judge will be affirmed.

As a preliminary matter, it should be noted that this court does not sit as a finder of facts but instead, reviews the findings of fact made by the Bankruptcy Judge, disturbing those findings only if they are found to be "clearly erroneous." Bankr.Rule 8013, 11 U.S.C.A. *See also Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981).

## I. FACTS

MH/MR commenced a proceeding in bankruptcy court requesting that certain assets held by Burnley be conveyed to it. In denying MH/MR's request Bankruptcy Judge Gibbons made the following findings of fact:

Burnley, a non-profit corporation, provided services to MH/MR by operating community living arrangement facilities in Monroe County. MH/MR is an agency of the counties of Carbon, Monroe and Pike and was created in accordance with § 301 of the Mental Health and Mental Retardation Act, 50 Pa.Stat.Ann. § 4101 *et seq.* (1966). The Act requires counties to provide services for mentally ill and mentally retarded individuals residing in the counties. MH/MR, in accordance with this mandate, provides community living arrangements which permit mentally retarded individuals to reside together in order to become responsible wage earning individuals within a community. Burnley operated such a community living arrangement for

MH/MR. Funding for the programs are provided through the Commonwealth of Pennsylvania, Department of Public Welfare in the amount of 100% of the expenses necessary for the operation of the programs.

Burnley obtained title to the premises located in Polk Township, Monroe County on November 28, 1973. On the same date, this property was mortgaged with Northeastern for $44,000.00.[1] Burnley also obtained title to the premises located in the Borough of Stroudsburg on March 20, 1975 and mortgaged this property with Northeastern as well for $40,000.00.[2] Additionally, between July 1, 1973 and June 30, 1982, Burnley acquired certain vehicles, furniture, equipment and furnishings for the above properties in order to provide services to the mentally retarded clients enrolled in MH/MR. All of the funds necessary to acquire the assets were either received from or reimbursed by MH/MR which received its funding from the Commonwealth.[3]

Record title to all of the above property was, and is, in the name of Burnley. No recorded financing statements covering any interest of MH/MR in any personal property at Burnley were filed. The real estate records do not indicate any liens on the property or interest in the property on behalf of MH/MR. Similarly, the certificates of title for the motor vehicles do not note any encumbrances or interests in favor of MH/MR. At no time did MH/MR file any documents which would indicate that MH/MR had any interest in the property.

## II. DISCUSSION

MH/MR does not challenge the facts as stated but instead challenges the conclusions drawn from the facts by the Bankruptcy Judge. MH/MR, in seeking to reverse the bankruptcy decision, argues first, under the regulations promulgated pursuant to the Mental Health & Mental Retardation Act, that MH/MR has property rights in the specified assets. Second, MH/MR contends it has an equitable interest in the assets and Burnley held only a naked legal title. Finally, appellant argues that a resulting trust arose when MH/MR advanced monies to Burnley. The issues raised by appellant will be discussed *seriatim.*

■ MH/MR claims that, pursuant to § 6145 of the County Mental Health and Mental Retardation Program Fiscal Manual promulgated by the Department of Welfare, title to all the above mentioned prop-

1. Title was recorded in the Office of the Recorder of Deeds of Monroe County in Stroudsburg, Pennsylvania in Deed Book Volume 522, page 198. The mortgage is recorded in Mortgage Book 258, page 262 in the Recorder of Deeds Office in Monroe County.

2. The deed was recorded March 31, 1975 in the Office of the Recorder of Deeds of Monroe County at Stroudsburg, Pennsylvania in Deed Book Volume 618, page 346. The mortgage, dated March 31, 1975 was recorded in Mortgage Book 291, page 248 in the same office. The court notes that it is unclear why, if MH/MR provided all funding, it was necessary to obtain mortgage financing at the time of both purchases. This, however, does not affect the court's analysis.

3. Pursuant to contracts between the Program and Burnley, the funds were used by Burnley to make payments on the above mortgages, liens upon some of the assets, and installment notes to finance purchases of automobiles. Specifically, the funding provided by the Department of Public Welfare and funneled through the Program to Burnley consisted of $83,767.00 used for the payment of the mortgage on the Polk County property and for the cost of repair, renovation and maintenance of the building. This fund also reimbursed Burnley for any monies advanced by Burnley to acquire the premises. Burnley also received $79,773.00 for payment of the entire debt service to Northeastern Bank of Pennsylvania on the Borough of Stroudsburg, Monroe County property. This money also was used for the cost of repairs, renovations and maintenance to the building and again reimbursed Burnley for any monies advanced by Burnley to acquire the premises. An additional $37,143.18 was funded to Burnley to acquire title for six automobiles used to provide transportation for the individuals living in the community living arrangement program. In excess of $20,000 was provided to Burnley to provide furnishings, appliances, curtains and carpeting to the real estate premises referred to above. Bankruptcy Judge's Finding of Fact No. 9.

erty acquired with MH/MR funding should remain with MH/MR. Fatal to MH/MR's argument is the assumption that these regulations are to apply retroactively. The regulations became effective July 1, 1978, subsequent to the Burnley's acquisition of the properties involved in this action.

The court agrees with the Bankruptcy Judge's analysis on this issue. The specific regulations do not speak to the issue of retroactive application. "No statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.Cons.Stat.Ann. § 1926. Further, the power to adopt administrative regulations which includes a power to give them a retroactive effect may be exercised only if the power does not disturb vested rights such as the impairment of contracts and other principles. Bankruptcy Opinion, Document 2 of the Record at 6 (citing *Jenkins v. Unemployment Compensation Board of Review,* 162 Pa.Super. 49, 56 A.2d 686 (1948)).

Appellant assumes that the regulations should be applied retroactively but does not offer support for its theory that they are retroactive. Like the Bankruptcy Judge, this court is not convinced that it was the Legislature's intent that substantive rights established far in advance of the promulgation of these regulations should be retroactively altered without a clear manifestation of such an intent. Bankruptcy Opinion, Document 2 of the Record at 6. The court rejects appellant's argument that the regulations vest title of the assets in MH/MR.[4]

■ Appellant's contention that it should be granted equitable title for the extent of its contribution to the acquisition of the properties is similarly rejected. The court agrees with appellees that such an inter-

pretation would violate the public policy against the establishment of secret liens embodied in the recording provisions in Pennsylvania statutes. *See* 13 Pa.Cons. Stat.Ann. § 9104, governing the creation of a security interest in real property; 75 Pa.Cons.Stat.Ann. § 1132 regarding perfection of a security interest in a motor vehicle; *see generally* 13 Pa.Cons.Stat.Ann. § 1101 *et seq.*

The court agrees with the Bankruptcy Judge that no equitable lien was created under the circumstances of this case. An equitable lien will arise when such an intention clearly appears from the language and circumstances.[5] *In Re O.P.M. Leasing Services, Inc.,* 23 B.R. 104 (S.D.N.Y.1982). An equitable lien will not be upheld where all available means of perfecting a lien were not employed by the creditor. *Miller v. Wells Fargo Bank International Corp.,* 406 F.Supp. 452, 484 (S.D.N.Y.1975), *aff'd,* 540 F.2d 548 (2d Cir.1976).

There is no indication in the Burnley-MH/MR contracts that equitable liens in the assets were contemplated by the parties nor did MH/MR take any of the steps to establish a legal lien. Under these circumstances, the court finds that appellant has failed to meet the strict burden of proof required in establishing an equitable lien. *See O.P.M. Leasing, supra.*

■ To the extent MH/MR argues that the Burnley-MH/MR contracts provide that ownership of all these assets remains with MH/MR, the court rejects that theory. The contract clearly states that only personal property shall remain with MH/MR. Any argument that MH/MR acquired superior rights to the personal property to the detriment of Northeastern and the creditors fails for the same reason that MH/MR's equitable lien theory fails. *See*

---

**4.** To the extent that assets may have been purchased by Burnley after the effective date of the regulations, the court does not believe, nor is there any evidence, that the regulations were intended to supplant the recording provisions of the Uniform Commercial Code. It should be noted that there is no evidence in the record before this court as to when certain items of personalty were acquired. Further, the regula-

tions do not purport to affect the rights of third-party creditors.

**5.** The court also notes there is no evidence in the record that creditors were aware of the regulations, nor is there any evidence that creditors were "on notice" that MH/MR was funding Burnley's purchases.

*supra* text at 972. *See also* text *supra* at p. 972 n. 4. Appellant further contends that the 1973 and 1975 contracts did not limit the property to "personal" property. Those contracts are not part of the record before the court, nor, apparently were they before the Bankruptcy Judge. "[A]lthough the proposition was contained in [MH/MR's] trial brief no evidence, either oral or written, was presented to this court at the time of trial to substantiate [MH/MR's] claim. We, therefore, find [MH/MR's] reliance on the language of the 1973 and 1975 contracts of no consequence." Bankruptcy Opinion, Document 2 of the Record at 10.

■ Finally, MH/MR urges the court to find a resulting trust. The court finds appellant's argument unpersuasive. A person seeking to establish the existence of a resulting trust bears a heavy burden of proof. The evidence must be "clear, direct, precise, and convincing." *Grubb v. Delathauwer*, 274 Pa.Super. 511, 418 A.2d 523 (1980) (citations omitted). MH/MR contends the evidence of a resulting trust in the case *sub judice* is supplied by the regulations and contracts and, therefore, such a finding of a trust "would be consistent with the actual intent of the parties as shown by the agreements." Appellant's Brief, Document 6 of the Record at 9. As to the real estate, there is no resulting trust unless the declaration of trust has been reduced to writing and recorded. *See* 21 P.S. § 601. The court does not believe MH/MR has met its burden and that reliance on the regulations and contract as evidence of a resulting trust as to Burnley's assets is insufficient in this case. Moreover, it does not appear that this issue was presented to the Bankruptcy court and, therefore, it will not be addressed further here.

In conclusion, the court finds itself in agreement with factual findings and conclusions of law embodied in the Opinion by the Bankruptcy Judge.

An appropriate Order will enter.