## Neill v. Reilly Estate

242

C.P. of Bucks County, no. 90-9490-14-5.

*Richard D. Magee,* for plaintiff.
*Charles F. Sampsel,* for defendant Robert L. Lansberry.

BIESTER, *J.,* April 3, 1996—

## FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER

This is a case in equity brought by Mae Neill, who is one of the daughters of the late Regina E. Reilly, to declare a resulting trust or a constructive trust on behalf of the plaintiff Mae Neill on premises located at 519 Rodgers Road, Bristol Township, Bucks County, Pennsylvania. The decedent was the record title owner of those premises when she died.

We held a hearing on this matter on November 29, 1993. We heard from a number of witnesses including Irma Backhouse, Mae Neill's sister; Pat Como, a Bucks County realtor and appraiser; Harry Donavan; Mae Neill's daughter, Regina Swift; and Mark Swift, Regina Swift's husband.

We started to hear testimony at that hearing from Mae Neill herself but were not persuaded that she could testify contrary to the so-called Deadman's Act, 42 Pa.C.S. §5930. We did, however, offer the plaintiff and the defendant an opportunity to brief that issue and we did after receiving those briefs and after an independent review permit her to testify at a second hearing held on September 25, 1995. The occasion for the delay in addition to our resolution of the Deadman's Act issue was the event of serious health problems experienced by Mae Neill in the winter of 1994. We now enter certain findings of fact in the traditional numbered paragraph form. Thereafter we will discuss some of the reasons why we have found as we have with respect to certain contested issues. We make the following findings of fact:

(1) The decedent, Regina E. Reilly, died intestate on April 3, 1990.

(2) On December 23, 1991, Robert L. Lansberry, Esquire was appointed administrator pendente lite of the estate of Regina E. Reilly, deceased by the Register of Wills of Bucks County, Pennsylvania.

(3) Prior to her death, the decedent resided at 513 Rodgers Road, Bristol Township, Bucks County, Pennsylvania.

(4) The decedent and her late husband, James Reilly, were the mother and father of six children including the plaintiff, Mae Neill, Bernard Reilly, Irma Helen

Backhouse, James Reilly (now deceased), John Reilly (now deceased) and Joseph Reilly (now deceased).

(5) The plaintiff, Mae Neill, is one of the intestate heirs to the estate of Regina E. Reilly, deceased, and is entitled to an intestate share thereof.

(6) The plaintiff, Mae Neill, was born on January 22, 1921 and is presently 75 years of age.

(7) The plaintiff, Mae Neill, resides at 519 Rodgers Road, Bristol Township, Bucks County, Pennsylvania where she has lived since 1953.

(8) During the war years of 1941 and 1942 Mae Neill experienced a romantic relationship with George Neill who eventually became her husband. That romantic relationship occurred in the City of Philadelphia where Mae was then living. In early 1942 George Neill, who was in the military service, was sent for training and eventually fought in the New Guinea campaign. A child, Mary, was subsequently born of that marriage.

(9) In any event, the parents of Mae Neill also had small children living at their home in Bristol Township and requested Mae Neill to come live with them. Among her responsibilities was taking care of the young children while Regina Reilly was working at Rohm & Haas.

(10) Certain dates are of extreme interest and usefulness as one evaluates a fundamental contested issue in this case. On January 22, 1942 Mae Neill became 21. On April 25, 1942 she was married to George Neill who very shortly thereafter was sent for training and then overseas. On or about the date of marriage or very shortly thereafter Mae Neill went to live with her parents pursuant to the arrangements earlier referred to. On May 2, 1942, one week after her marriage, an agreement of sale on an installment plan was entered into by James Reilly with Minot J. Hill and North

Eastern Salvage Company for the purchase of two lots of land identified as lot nos. 318 and 319 for $250 to be paid with $5 down and 10 dollars thereafter until the full sum was paid.

(11) Those lots were contiguous to the lots owned by Mae Neill's parents and therefore contiguous to the lots on which her parents lived and where she shortly after April 25, 1942 was residing.

(12) Mae Neill has testified and we now find as a fact that Mr. Reilly, her father, took her to the office of the president of North Eastern Salvage Company and there he entered into the agreement of sale above referred to. We now find that Mae Neill paid $5 down payment when her father executed the agreement of sale and we now find that thereafter Mae Neill paid the $10 monthly installments until the total purchase price of $250 was paid. There were no improvements on the two lots sold pursuant to that agreement of sale.

(13) During George Neill's service overseas, Mae Neill received a monthly allotment from the military service together with additional sums which George Neill himself sent to her. She therefore was sufficiently financed as to be able to pay the $10 per month called for by the agreement of sale.

(14) On August 23, 1944, the said North Eastern Salvage Company executed and delivered a deed conveying the aforesaid lots which were the subject of the May 2, 1942 agreement of sale to Regina E. Reilly, the decedent, which deed was thereafter recorded in the Office of the Recorder of Deeds of Bucks County in deed book no. 815, page 409, etc.

(15) The two lots described in the aforesaid deed are now known as 519 Rodgers Road, Bristol Township, Bucks County, Pennsylvania. They are contiguous to the property known as 513 Rodgers Road, Bristol Town-

ship, Bucks County, Pennsylvania. Both sets of lots are identified as one tax parcel in the Bucks County Tax Mapping Department.

(16) Although the agreement of sale was executed by Mae Neill's father, James Reilly, the deed pursuant to the final payment of the installments was made out to the plaintiff's mother, Regina E. Reilly, on August 23, 1944.

(17) George Neill Sr. returned from the war on December 24, 1945 and the Neill family continued to live in the Reilly's house at 513 Rodgers Road. In 1952 George Neill became a police officer with the Bristol Township Police Department and thereafter Mae Neill and George Neill began construction of a home on the two lots 318 and 319, now numbered 519 Rodgers Road. They built the home essentially as a family construction. It took a while to complete. Materials were acquired in a haphazard fashion from a salvage yard, cinder blocks from "a man in Bristol," wood from an old barn, and reject material from Levittown Construction. A number of individuals in the family including the parents of Mae Neill and Mae Neill and her husband George Neill and other relatives and friends physically helped in the building process of this home. George Neill did the wiring for the house and did the carpentry work.

(18) Finally, in 1953, Mae Neill, her husband George and their family, including George Jr. and Mary, moved into the new three-bedroom home at 519 Rodgers Road.

(19) Since four lots comprised one single tax parcel of land, Mae Neill paid for one-half of the taxes assessed on the properties located at 513 and 519 Rodgers Road as her share of the taxes. Mae Neill did so in cash and it was conceded by virtually all witnesses that Regina Reilly preferred to do all of her business in cash

and there was some testimony of family members who actually witnessed Mae Neill paying the decedent her share of the taxes in cash.

(20) Since moving in, Mae Neill has lived continuously on the premises located at 519 Rodgers Road and has paid all maintenance expenses, repairs and improvements to the property. George Neill Sr. died on July 6, 1975. The expenses and projects included replacing the roof, the heater, the hot water heater on two occasions, installing aluminum siding and indoor paneling as well as constructing a porch. All of the sewer, electric, oil and telephone bills relating to the property located at 519 Rodgers Road were paid by Mae Neill since 1953. Mae Neill eventually raised six children at 519 Rodgers Road.

(21) Neither her father, James Reilly, nor her mother, Regina Reilly, contributed anything toward ongoing expenses related to the home located at 519 Rodgers Road. Mae Neill has testified that she did not realize that her mother's name was on the deed to the 519 Rodgers Road property until after her mother died. She became acquainted with the matter apparently at a family meeting discussing distribution of the decedent's estate.

(22) The plaintiff, Mae Neill, and her husband, George Neill, never paid rent to the decedent for occupancy of the house at 519 Rodgers Road.

We revert back in our discussion of how we made these findings of fact to the key dates of Mae Neill's adulthood, the date of her marriage to George Neill and the date at which the agreement of sale was entered into by James Reilly. There are, we suppose, at least two possibilities with respect to the execution of that agreement of sale. One is that James Reilly, on his own and without reference to Mae Neill in any way, simply decided to acquire the two contiguous lots and

determined to purchase them on the installment plan. There does not seem to be any reason for his having done so and in fact some of the testimony in the case indicated that he was not interested in purchasing those two lots as he felt that they were not necessary. The other possibility is that the events occurred as Mae Neill herself has testified: that her father took her to the land office and executed the agreement and that she, Mae Neill, paid the down payment and paid the monthly payments herself. As between the two possibilities the latter seems, as one looks at the confluence of dates, more probable. Mae Neill had just married on April 25, 1942. She was moving up to live with her parents. Her husband was heading overseas. She had an allotment from her husband pursuant to which she had some modest resources available. Within a week of that marriage the agreement of sale was executed. It seems far more probable under the circumstances that the occasion for the agreement of sale was Mae Neill's needs rather than some independent decision on the part of James Reilly. The parents, one can reasonably infer, were prepared to provide a home for Mae Neill and her two small children, but not forever. Early on, they determined that she should get started on acquiring a lot for her post-war home. It seems unusual that Mae Neill would testify to so particular a physical event of being taken up to the real estate office if in fact that event did not occur. It is also understandable that Mr. Reilly did not wish to have the deed made out in the name of Mae Neill because as long as it remained either in his name or his wife's name it was not subject to any property right on the part of George Neill. And it is logical that the family wished to see how well things worked out with George Neill before placing him in a position in which he

might have some property interest of any remote sort in the subject real estate contiguous to their own. That would explain why the deed ultimately was made in the name of Regina Reilly. The findings of fact that we have made on this issue therefore are consistent with common sense, human experience and reflect the special circumstances of the Reilly family.

## CONCLUSIONS OF LAW

The first legal issue which confronts us in this case is whether Mae Neill was competent to testify at all. It was urged and we were initially persuaded that she was incompetent under the statute commonly known as the Deadman's Act, 42 Pa.C.S. §5930. As is well-known the Deadman's Act provides that where any party to a thing or contract is dead, and that party's interest is passed to a party on the record who represents that interest in the controversy, neither surviving party nor any other person whose interest shall be adverse to the said right or interest shall be a competent witness to any matter occurring before the death of the party. 42 Pa.C.S. §5930. We were moved from our initial determintion that Mae Neill was not competent under the Deadman's Act by memoranda supplied to us which addressed us to the case of *In re Estate of Gadiparthi,* 158 Pa. Commw. 537, 632 A.2d 942 (1993). In that case the Deadman's Act issue focused on whether Dr. Gadiparthi would be competent to testify that the property which his wife (the decedent) held legal title to at the time of her death was in fact held in trust for him. Dr. Gadiparthi testified that he furnished the entire consideration for the properties and that he held equitable title and that no gift was intended. Dr. Gadiparthi testified that the properties were titled in the decedent's name to insulate them from creditors in the event of

a malpractice suit. It was testified by his attorney that Dr. Gadiparthi wrote all the checks and did all the negotiations for the property and that the consideration to purchase the property was provided by Dr. Gadiparthi and that Dr. Gadiparthi provided the money for maintenance, taxes and other expenses connected with maintaining the subject properties. The Commonwealth Court held that the Deadman's Act exception commonly known as the devisavit vel non exception applied and that Dr. Gadiparthi was competent to testify as he did. The instant case involves similar testimony from Mae Neill. Her testimony is that she paid for the property although it was titled in the decedent's name. It was the testimony of Mae Neill that she not only paid for the property itself, but also provided the money for maintenance, taxes and other expenses connected with maintaining the property. In Dr. Gadiparthi's instance he was alleging a trust in fact. In Mae Neill's instance she is alleging a trust in law in the nature of a resulting trust. It strikes us the consequence is the same in that the decedent holds in trust for someone else and that someone else may testify in order to establish the nature and character of that trust. We therefore permitted Mae Neill to testify and followed the *Gadiparthi* case.

Whether the *Gadiparthi* case is actually fully supported by the precise language of the Deadman's Act, is not a matter for our determination inasmuch as the Commonwealth Court has determined that it is and we follow the *Gadiparthi* case with respect to the testimony of the plaintiff in the instant case.

The issue then devolves to whether the plaintiff has carried her particular burden of proof with respect to the establishment of a resulting trust. First of all, we note that a resulting trust may not be established by casual or modest testimony and in fact the evidence

must be clear and direct, precise, convincing and be of a high probative value. As the defense attorney has pointed out the primary question is whose funds were used to make the purchase of the subject property from the North Eastern Salvage Company. We have addressed our reasoning with respect to our determination that Mae Neill's testimony is credible and that her testimony is supported by such independent material as the proximity of her marriage and the execution of the agreement of sale and the circumstances of her living arrangements at the time of the agreement of sale and the conduct of the parties after the agreement of sale including the nature of the plaintiff's activities financially in support of the property and her and her husband's most direct efforts with respect to the construction of the home which now sits on the property. We find that that combination of evidence is convincing and precise and establishes that Mae Neill in fact paid for that property.

Under the circumstances therefore a resulting trust obviously arises in her favor and against the estate of Regina E. Reilly. A resulting trust is created when the circumstances indicate the absence of an intention to give the beneficial interest to the person in whom the legal title of the property is vested. When a transfer of property is made to one person and the purchase price is paid by another our courts have held that a resulting trust occurs. See *Zahorsky v. Leschinsky,* 394 Pa. 368, 372, 147 A.2d 362, 365 (1959). In *Grubb v. Delathauwer,* 274 Pa. Super. 511, 418 A.2d 523 (1980), and citing Restatement (Second) of Trusts §440 (1959) and *Masgai v. Masgai,* 460 Pa. 453, 458, 333 A.2d 861, 864 (1975), our Superior Court recognized the general rule as follows:

"[W]here a transfer of property is made to one person and the purchase price is paid [to] another a resulting

trust arises in favor of the person by whom the purchase price is paid.' . . . This rule is based upon an inference that 'the purchaser does not intend that the transferee should have the beneficial interest in the property, but that the purchaser himself shall have the beneficial interest." *Grubb v. Delathauwer, supra* at 515, 418 A.2d at 525.

We also find that a constructive trust arises in this case inasmuch as unjust enrichment would obviously result if the decedent's estate retains this property. We find under the circumstances of this case that such an unjust enrichment would occur. We do not make any finding of wrongdoing on the part of the decedent or anyone in the defense of this case. Nor do we believe that any such finding is necessary for a constructive trust or a finding of unjust enrichment. See *Hoss v. Pittsburgh National Bank,* 495 F. Supp. 815, 819, 820 (W.D. Pa. 1980).

For all of the above reasons and based upon the findings of fact we have made and the conclusions of law we have made, we do now find that a resulting and/or constructive trust arises in this case in favor of the plaintiff, Mae Neill, and against the estate of Regina E. Reilly. And we enter the following decree nisi

## DECREE NISI

And now, April 3, 1996, it is hereby ordered, directed and decreed that we find in favor of the plaintiff, Mae Neill, and against the estate of Regina E. Reilly.

The prothonotary is directed to notify the attorneys of record of the filing of this decree nisi pursuant to Pa.R.C.P. no. 1517, and, if post-trial motions are not filed within 10 days after such notice in accordance with Pa.R.C.P. no. 227.1, to enter the decree nisi, on praecipe, as the final decree in accordance with Pa.R.C.P. no. 227.4.