685 A.2d 600

**Rosemarie FENDERSON, Executrix of the Will of Bryan Fenderson, Deceased, Appellant,**

**v.**

**Lettie Austin FENDERSON, Executrix of the Will of Elizabeth Craft, Deceased.**

Superior Court of Pennsylvania.

Argued Sept. 19, 1996.

Filed Nov. 26, 1996.

414

416

418

Thomas M. Thistle, Jr., Philadelphia, for appellant.

Carol A. Black, Philadelphia, for appellee.

Before DEL SOLE, POPOVICH and BECK, JJ.

BECK, Judge:

Appellant-plaintiff Rosemarie Fenderson, as Executrix of the Will of Bryan Fenderson, sought an ownership interest in real property under the following theories: (1) resulting trust; (2) constructive trust; and (3) an express oral agreement. A judgment was entered by the court refusing to impose a resulting or constructive trust. The chancellor found that appellant failed to prove by clear, explicit and direct evidence that Bryan Fenderson's estate was entitled to an ownership interest in the property by way of a resulting trust or constructive trust and in the alternative that a resulting or constructive trust would be invalid. Upon review of the chancellor's findings of fact which are supported by clear, explicit and direct evidence, a resulting trust exists in favor of Bryan Fenderson's estate. Furthermore, we find that the resulting trust is not invalid.

■ Our scope of review of an equity decree is limited. *Dudash v. Dudash*, 313 Pa.Super. 547, 460 A.2d 323 (1983). *See DeMarchis v. D'Amico*, 432 Pa.Super. 152, 637 A.2d 1029 (1994). The chancellor's findings of fact will not be reversed

unless it appears that the chancellor clearly committed an abuse of discretion or an error of law. *Id.* However, the chancellor's conclusions of law, which are derived from nothing more than reasoning from underlying facts and not involving a determination of credibility of witnesses, are reviewable. *Id.; Linnet v. Hitchcock,* 324 Pa.Super. 209, 471 A.2d 537 (1984) (appellate court is not bound by trial court's conclusions of law based on its findings of fact). *See In re Estate of Cornell,* 511 Pa. 475, 515 A.2d 555 (1986) (whether the evidence presented was clear, direct, precise and convincing is a question of law). The following is an account of the facts based on the chancellor's findings of fact.

The instant action involves property purchased by members of the Fenderson family. The Fenderson family consisted of Lydia Fenderson, the mother of Bryan Fenderson, Lewis Fenderson and Elizabeth Fenderson Craft. Charles Craft is Elizabeth Fenderson Craft's husband and Rosemarie Fenderson is Bryan Fenderson's wife. Lettie A. Fenderson is Lewis Fenderson's wife. Rosemarie Fenderson is the appellant-plaintiff and the Executrix of Bryan's will, while Lettie Fenderson is the appellee-defendant and the Executrix of the Will of Elizabeth Craft.

Prior to the purchase of the real estate involved in the present action, Lydia, Bryan, Elizabeth and Charles Craft lived with Bryan Fenderson in his home. For the time relevant to this case, Lewis Fenderson lived in Washington D.C. In 1961, the family decided to purchase a family home at 15 Pelham Road ("the Property") for $24,279.11. Lewis Fenderson paid the initial deposit of $2,300. At settlement, Charles Craft provided $ 6,890.32 in cash and Bryan Fenderson provided $4,388.37. This amount was in the form of a settlement check from the sale of Bryan's home which he endorsed and made payable to Lewis, Lydia and Elizabeth and which they in turn endorsed and made payable to the title company. The remainder of the purchase price was provided for by a $13,000 mortgage acquired by Lewis.

Lewis Fenderson, Elizabeth Craft and Lydia Fenderson took title to the property as joint tenants with right of

survivorship. Bryan Fenderson was not named in the deed. Testimony revealed that Bryan was not a title owner because at the time the property was purchased, there was a lawsuit filed against Bryan.[1]

Even though Bryan was not a legal owner of the property, he and Rosemarie along with Lydia and Elizabeth and Charles Craft lived on the property until 1969. In 1969, Elizabeth and Lydia moved out and Bryan and Rosemarie occupied a portion of the property and rented the remainder. Bryan Fenderson reimbursed Lewis and Elizabeth for 50% of the expenses and mortgage payments associated with the property, as well as, paid $2,254 directly to the mortgage company.[2]

In 1991, Elizabeth and Bryan were the only parties still alive who were initially involved in the purchase of the property.[3] Elizabeth passed away in January of 1991. Since Bryan was not a title owner of the property, the property was distributed according to Elizabeth's will.[4] After Bryan's death in March of 1991, appellant, as executrix of Bryan Fenderson's estate, initiated the present action seeking an ownership interest in the property.

Appellant claimed Bryan Fenderson's estate had an ownership interest in the property under an express oral agreement to add Bryan's name to the deed or by a resulting or constructive trust. There was a hearing before a judge *pro tem*. After the hearing, the chancellor issued a decree nisi refusing to find that Bryan Fenderson's estate had an ownership interest in the property.

1. The lawsuit against Bryan was dismissed with prejudice in 1975.

2. The chancellor found that in addition to the money Bryan paid to reimburse his brother and sister, Bryan paid $80,057.47, including mortgage payments, to maintain and pay expenses on the property. It was determined that Bryan contributed 61% of the total costs while Lewis and Elizabeth jointly contributed 39% of the total costs of the property.

3. Charles Craft died in 1964, Lydia Fenderson passed away in 1972 and Lewis Fenderson died in 1983.

4. Elizabeth's will provided for a life estate in Bryan Fenderson. Upon his death or vacating the property, the premises were to be sold and the proceeds distributed 10% to Bryan Fenderson, 50% to Lettie Fenderson and 40% to charities.

After issuing findings of fact, the chancellor concluded that appellant had failed to sustain her burden of proving that Bryan's estate was entitled to a resulting trust by clear, explicit, direct, unequivocal and convincing evidence. The chancellor then determined that even if a resulting trust existed, it was invalid, because the trust was created to avoid the claims of potential creditors. The chancellor concluded that while the parties discussed adding Bryan's name to the deed, they never reached an agreement.

However, the chancellor did create a life estate in Rosemarie Fenderson's favor. He found that Elizabeth Craft entered into a contract with Bryan promising to make a will in which Rosemarie would possess a life estate in the property.[5] After exceptions were filed by appellant and denied by the trial court, the decree nisi was made final and entered as a judgment. Rosemarie filed the appeal presently before us. We reverse.

## CONTRACT TO MAKE A WILL AND PROVIDE A LIFE ESTATE FOR PLAINTIFF

The chancellor's order declaring a life estate for the benefit of Rosemarie cannot be affirmed on appeal. A trial court errs when it rules on an issue not presented to it, because an issue not raised is deemed waived. *Pennsylvania Department of Transportation v. Reott*, 56 Pa. Commw. 252, 424 A.2d 991 (1981). We find that it was error for the chancellor to grant Rosemarie a life estate interest in the property, when neither the plaintiff nor the defendant set forth the theory of a promise to make a will benefiting Rosemarie as a basis for establishing an interest in the property.

## RESULTING TRUST

We also find the chancellor erred in failing to impose a resulting trust in favor of Bryan Fenderson's estate. Based

**5.** This conclusion was based on the chancellor's interpretation of a conversation between Elizabeth and Bryan. Elizabeth promised to "do the right thing" after Bryan expressed his concern over what would happen to his wife once he died.

on the chancellor's findings of fact, supported by clear, precise, direct and unequivocal evidence, a resulting trust exists. Furthermore, the resulting trust is not invalid.

A resulting trust arises when a person makes a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have a beneficial interest in the property. *Masgai v. Masgai,* 460 Pa. 453, 333 A.2d 861 (1975); *Policarpo v. Policarpo,* 410 Pa. 543, 189 A.2d 171 (1963). A purchase-money resulting trust arises in favor of the person who paid the purchase price, when the transfer of property is made to one person and the purchase price is paid by another. *Masgai, supra; Grubb v. Delathauwer,* 274 Pa.Super. 511, 418 A.2d 523 (1980); *Potoczny v. Dydek,* 192 Pa.Super. 550, 162 A.2d 70 (1960). *See Restatement (Second) of Trusts* § 440. In order for a purchase-money resulting trust to arise, the following is required: (1) the transfer is made to one person and the purchase price is paid by another; (2) the payor does not have the intention that no resulting trust shall arise; (3) the transferee is not the natural object of the transferor's bounty. *Fitzpatrick v. Fitzpatrick,* 346 Pa. 202, 29 A.2d 790 (1943).

A purchase-money resulting trust can even arise when several persons contribute to the payment of the purchase price and title is not in the names of all contributing payors. *Zahorsky v. Leschinsky,* 394 Pa. 368, 147 A.2d 362 (1959); *Potoczny, supra.* When this occurs, a resulting trust arises in favor of the person who paid the purchase price in the proportion that the amount paid bears to the total purchase price. *Lewis v. Spitler,* 226 Pa.Super. 201, 207, 403 A.2d 994 (1979). *See Restatement (Second) of Trusts* § 454.

A resulting trust must arise at the time title is transferred. *Musselman v. Myers,* 240 Pa. 5, 87 A. 425 (1913). Payment of the purchase price by the beneficiary subsequent to the transfer of title without a prior obligation on the part of the beneficiary to pay fails to raise a resulting trust. *Id.* As a result, the purchase money must be paid at

the time title passes or the beneficiary must be obligated to pay. *Id. See United States of America v. Premises Known as 717 South Woodard Street Allentown, Pennsylvania,* 804 F.Supp. 716 (1992), *modified,* 2 F.3d 529.

The law requires clear, direct, precise and convincing evidence of a resulting trust before it will convert absolute ownership into an estate of lesser quality. *Masgai, supra; Grubb, supra.* The person seeking the imposition of the resulting trust has the burden of meeting the evidentiary standard.

The law is clear that once the evidence establishes that a party has made a partial payment towards the purchase price, the beneficiary has a prima facie case for a purchase-money resulting trust in his favor in the proportion that the amount paid by him bears to the total purchase price. *Purman v. Johnston,* 343 Pa. 647, 22 A.2d 722 (1941) (mere payment of purchase price is sufficient to create a resulting trust); *Fitzpatrick, supra; Lewis, supra. See Restatement (Second) of Trusts* § 440. In the present case, after setting forth the findings of fact the chancellor found that appellant failed to meet the burden of providing clear, direct, precise and convincing evidence that a resulting trust existed. We disagree.

The chancellor found that "the cash portion of the acquisition was provided in part by the settlement check from the sale of Bryan Fenderson's home in the amount of $4,388.37 which he endorsed and made payable to Lewis Fenderson, Lydia Fenderson and Elizabeth Craft and which, they, in turn, endorsed and made payable to the title company." Chancellor's Findings of Fact. According to this finding of fact, Bryan contributed ⅙ of the amount towards the purchase price at the time title passed to Lewis Fenderson, Elizabeth Craft and Lydia Fenderson. This finding is clear, precise, direct evidence that Bryan Fenderson contributed a portion of the purchase price at settlement and establishes a prima facie case for a partial purchase-money resulting trust.

A prima facie case established by the party seeking a resulting trust can be rebutted by evidence showing that the payor did not intend to receive a resulting trust or any beneficial interest in the land. *Masgai, supra; Lewis, supra. See Restatement (Second) of Trusts* § 441. When there is no evidence as to the intention of the payor, it is inferred that the payor intended to acquire a beneficial interest in the property in such proportion as the part paid by him bears to the total purchase price. *Restatement (Second) of Trusts* § 454 cmt. b. In the present case, appellee failed to produce direct evidence that Bryan did not intend to have a beneficial interest in the property. As a result, we can infer that Bryan intended to acquire a beneficial interest in the property to the extent of his contribution to the purchase price. In fact, the chancellor's findings of fact (1) that the only reason Bryan's name was not added to the deed was because a lawsuit had been filed against Bryan and (2) that Bryan had reimbursed Lewis and Elizabeth for the mortgage payments they made, support the assertion that Bryan did intend to have a beneficial interest in the property.

In order to impose a resulting trust, the transferee must not be the natural object of the transferor's bounty. When the transfer of property is made to a wife, child or other natural object of the bounty of the person who contributed to the purchase price, it is presumed that the transaction was intended as a gift and a resulting trust does not arise. *Hornyak v. Sell,* 427 Pa.Super. 356, 629 A.2d 138 (1993); *Kohr v. Kohr,* 271 Pa.Super. 321, 413 A.2d 687 (1979). *See Restatement (Second) of Trusts* § 443. However, the relationship of brother and sister, does not, *per se,* give rise to a presumption that one is the object of the other's bounty. *Fitzpatrick, supra.* In the present case, there was no evidence admitted to show that Bryan's contribution was a gift. As a result, the fact that Bryan Fenderson is the brother of Lewis and Elizabeth does not give rise to a presumption of a gift and does not interfere with the finding of a resulting trust in favor of Bryan Fenderson's estate.

Upon review of the chancellor's findings of fact, there is clear, direct evidence that Bryan contributed to the purchase price and there is no evidence that he did not intend to receive a resulting trust. As a result, we find that a resulting trust was created at the time of settlement in Bryan Fenderson's favor in proportion to the amount he contributed.

 In the present case, a partial purchase-money resulting trust arose at the time of settlement which must be enforced unless the trust was established for an improper purpose, i.e. the purpose of defrauding the creditors of the payor. *Policarpo v. Policarpo, supra; In re Summers Estate,* 424 Pa. 195, 226 A.2d 197 (1967). The chancellor found that the reason Bryan Fenderson's name was not included in the deed was because of a lawsuit filed against him. The plaintiff in the lawsuit had fallen on Bryan Fenderson's property and had initiated a personal injury action.

 The plaintiff in the lawsuit filed against Bryan Fenderson is considered a creditor of Bryan's under the Pennsylvania Uniform Fraudulent Transfer Act. 12 Pa.C.S. § 5101(b) (Pennsylvania Uniform Fraudulent Transfer Act defines creditor as any person who has a claim, right to payment regardless of whether it is reduced to judgment, liquidated, fixed, contingent, matured, unmatured or disputed). Therefore, it would seem as if a resulting trust cannot arise in favor of Bryan Fenderson because he contributed to the purchase price without taking little in order to defraud a potential creditor. However, section 444 of the Restatement (Second) of Trusts allows a resulting trust created for an illegal purpose to arise unless it is against public policy to enforce such a resulting trust. *Restatement (Second) of Trusts* § 444 cmt. a.

 In the present case, the chancellor also found that the lawsuit was dismissed with prejudice. We find that it is not against public policy to enforce the instant resulting trust when the filed lawsuit was dismissed without any evidence that the claim which Bryan sought to avoid had any substan-

tial foundation. As a result, the resulting trust in favor of Bryan Fenderson is valid and must be enforced.

As set forth above, at the time title passed in the property, a resulting trust was created in Bryan Fenderson's favor. By contributing $4,388.67 to the purchase price of $24,279.11 at the time of settlement, Bryan Fenderson obtained a ⅙ fractional undivided interest in the property. In the present case, Lewis Fenderson, Elizabeth Craft and Lydia Fenderson (the parties whose names appear on the deed) had an interest in the property as joint tenants with right of survivorship. As a result, we must determine whether Bryan holds his interest as joint tenant with right of survivorship or as a tenant in common. There is no case law on the subject to guide us under these particular facts, and as set forth below, we find that Bryan Fenderson's ownership interest in the property is as a joint tenant with right of survivorship.

The only case law dealing with ownership interest in the property concerns the situation where title is taken by a person who pays a portion of the purchase price, and the other portion is paid by another who does not take title. *Lewis, supra.* In this situation, the court created a partial purchase-money resulting trust for the benefit of the payor who held his interest in the property as a tenant in common with the transferor. *Id.* Because the theory of a resulting trust depends on the parties' intent and because the deed provides for joint tenancy with right of survivorship, we find that Bryan Fenderson holds an interest in the property as a joint tenant with right of survivorship.

The doctrine of resulting trusts is based on the presumption of the intent of the parties arising from and shown by their acts at the time of the transaction. *Peoples–Pittsburgh Trust Co. v. Saupp,* 320 Pa. 138, 182 A. 376 (1936). In the present case, at the time the deed was created, it provided for joint tenancy with right of survivorship. As set forth above, the resulting trust was also created at the same time the deed was transferred. By acting in a manner which lead to the creation of a resulting trust, as well as providing for

joint tenancy with right of survivorship, the parties taking title to the deed not only intended to hold their interests as joint tenants with right of survivorship, but also intended for Bryan Fenderson's interest to be as a joint tenant with right of survivorship.

The law is clear that to hold property as joint tenants with right of survivorship, the four unities must be present: unity of time, unity of possession, unity of title and unity of interest. *See Summary of Pennsylvania Jurisprudence (Second)* Property § 6:4. We find that the creation of a resulting trust does not destroy the four unities. Unity of time requires that the interests of the tenants vest at the same time. Unity of title requires the tenants to have obtained their title by the same instrument. Because a resulting trust is created at the time title is transferred, Bryan's interest in the property was created at the same time that Lewis, Elizabeth and Lydia received an interest in the property, as well as from the same instrument. Unity of possession requires the tenants to have an undivided interest in the whole estate. This unity is satisfied because by contributing a portion of the purchase money at the time of settlement, Bryan Fenderson received a ⅙ undivided interest in the property. Unity of interest requires the tenants to have estates in the property of the same type, duration and amount. Because a resulting trust arises at the time title passes and is established from the same instrument, Bryan's interest is the same type, duration and amount as the remainder of the parties listed in the deed.

Since Bryan Fenderson is a joint tenant with right of survivorship, Bryan Fenderson, as the last remaining survivor, had sole ownership and control over the property prior to his death. *In re Parkhurst's Estate* 402 Pa. 527, 167 A.2d 476 (1961) (essence of joint tenancy with right of survivorship is the vesting of two or more persons with joint ownership during lifetime with sole ownership and control passing to survivor at the death of other joint tenants). Once Bryan passed away, the property should have been disposed of under Bryan Fenderson's estate.

428

Order reversed. Trial court is directed to enter order imposing resulting trust on the property known as 15 Pelham Road, Philadelphia, PA in favor of the estate of Bryan Fenderson. Jurisdiction relinquished.